JS 44   (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

Elizabeth Cronk, individually and on behalf of all others similarly situated

**(b)** County of Residence of First Listed Plaintiff   Hudson County, NJ
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Berger & Montague, P.C., 1622 Locust St., Phila. PA 19103, 215-875-4656

## DEFENDANTS

GMAC Mortgage, LLC

County of Residence of First Listed Defendant   Montgomery County, PA
(IN U.S. PLAINTIFF CASES ONLY)

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1  U.S. Government Plaintiff
- ☒ 3  Federal Question (U.S. Government Not a Party)
- ☐ 2  U.S. Government Defendant
- ☐ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 900 Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | Alien Detainee | | ☐ 950 Constitutionality of |
| | Other | | ☐ 465 Other Immigration | | State Statutes |
| | ☐ 440 Other Civil Rights | | Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

- ☒ 1  Original Proceeding
- ☐ 2  Removed from State Court
- ☐ 3  Remanded from Appellate Court
- ☐ 4  Reinstated or Reopened
- ☐ 5  Transferred from another district (specify)
- ☐ 6  Multidistrict Litigation
- ☐ 7  Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
15 U.S.C. § 1601

Brief description of cause:
Violation of Truth-in-Lending Act/Breach of Contract

## VII. REQUESTED IN COMPLAINT:

☒ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:

JURY DEMAND:   ☐ Yes   ☒ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):

JUDGE

DOCKET NUMBER

DATE
08/12/2011

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #         AMOUNT         APPLYING IFP         JUDGE         MAG. JUDGE

JS 44 Reverse (Rev. 12/07)

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.     (a) Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

  **(b) County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

  **(c) Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.     Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.

United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; federal question actions take precedence over diversity cases.)

**III.     Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.     Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

**V.     Origin.** Place an "X" in one of the seven boxes.

Original Proceedings. (1) Cases which originate in the United States district courts.

Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.

Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.

Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment. (7) Check this box for an appeal from a magistrate judge's decision.

**VI.     Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.**     Example:     U.S. Civil Statute: 47 USC 553
                     Brief Description: Unauthorized reception of cable service

**VII.     Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand. In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.

Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.     Related Cases.** This section of the JS 44 is used to reference related pending cases if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

AO 440 (Rev. 12/09)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Eastern District of Pennsylvania

| | |
|---|---|
| Elizabeth Cronk, individually and on behalf of all others similarly situated | ) ) ) |
| *Plaintiff* | ) |
| v. | )     Civil Action No. |
| GMAC Mortgage, LLC | ) ) |
| *Defendant* | ) |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*  GMAC Mortgage LLC
1100 Virginia Drive
Fort Washington, PA 19034

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:  Shanon J. Carson
1622 Locust Street
Philadelphia, PA 19103
(215)-875-4656

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*Michael E. Kunz*
*Clerk of Court*

Date: _____          _____
*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 12/09)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)*   GMAC Mortgage LLC

was received by me on *(date)*                          .

◻ I personally served the summons on the individual at *(place)*

on *(date)*                          ; or

◻ I left the summons at the individual's residence or usual place of abode with *(name)*

, a person of suitable age and discretion who resides there,

on *(date)*                          , and mailed a copy to the individual's last known address; or

◻ I served the summons on *(name of individual)*                          , who is

designated by law to accept service of process on behalf of *(name of organization)*

on *(date)*                          ; or

◻ I returned the summons unexecuted because                          ; or

◻ Other *(specify):*

                          .

My fees are $                    for travel and $                    for services, for a total of $    0.00    .

I declare under penalty of perjury that this information is true.

Date:

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

# UNITED STATES DISTRICT COURT

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA— DESIGNATION FORM to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.**

Address of Plaintiff: Elizabeth Cronk, 437 Dunlin Plaza, Secaucus, New Jersey 07094

Address of Defendant: GMAC Mortgage LLC, 1100 Virginia Drive, Fort Washington, Pennsylvania 19034

Place of Accident, Incident or Transaction: GMAC is a limited liability company whose corporate headquarters is in Fort Washington Pennsylvania.  Plaintiff is a citizen and resident of Secaucus, New Jersey.  The incidents and transactions underlying this action took place in Pennsylvania, New Jersey, and other and other locations.

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?
(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1)                                         Yes __ No **X**_____

Does this case involve multidistrict litigation possibilities?                                                                    Yes **X**_ No_____

*RELATED CASE, IF ANY*:
Case Number:          N/A         Judge:      N/A        Date Terminated:      N/A

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?
                                                                                                                 Yes __ No **X**_____

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?                                                               Yes ____ No **X**___

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?                                              Yes___ No **X**

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?
                                                                                                                 Yes___ No **X**

CIVIL: (Place X in ONE CATEGORY ONLY)

A. *Federal Question Cases*:
1. __Indemnity Contract, Marine Contract, and All Other Contracts
2. __FELA
3. __Jones Act-Personal Injury
4. __Antitrust
5. __Patent
6. __Labor-Management Relations
7. __Civil Rights
8. __Habeas Corpus
9. __Securities Act(s) Cases
10. __Social Security Review Cases (Please specify)
11. **X** All other Federal Question Cases

B. *Diversity Jurisdiction Cases*:
1. __ Insurance Contract and Other Contracts
2. __Airplane Personal Injury
3. __Assault, Defamation
4. __Marine Personal Injury
5. __Motor Vehicle Personal Injury
6. __Other Personal Injury
7. __Products Liability
8. __Products Liability— Asbestos
9. __All other Diversity Cases

## ARBITRATION CERTIFICATION
*(Check Appropriate Category)*

I,  Patrick F. Madden, counsel of record do hereby certify:
        **X** Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;

        **X** Relief other than monetary damages is sought.

DATE: August 12, 2011      _____            309991_____
                                Attorney-at-Law: Patrick F. Madden              Attorney I.D.#

**NOTE:** A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

**I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.**

DATE: August 12, 2011      _____            309991_____
                                Attorney-at-Law: Patrick F. Madden              Attorney I.D.#

CIV. 609 (6/08)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA
## CASE MANAGEMENT TRACK DESIGNATION FORM

| | | |
|---|---|---|
| **ELIZABETH CRONK, individually and on behalf of all others similarly situated,** | : | **CIVIL ACTION** |
| **Plaintiff,** | : | |
| **v.** | : | **NO.** |
| **GMAC MORTGAGE, LLC,** | : | |
| **Defendant.** | : | |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.          ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
and Human Services denying plaintiff Social Security Benefits.          ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2. ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
exposure to asbestos.          ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
commonly referred to as complex and that need special or intense management by
the court. (See reverse side of this form for a detailed explanation of special
management cases.)          **(X)**

(f) Standard Management – Cases that do not fall into any one of the other tracks.          ( )

Date  August 12, 2011          Attorney-at-law: Patrick F. Madden   Attorney for: Plaintiff

Telephone: 215.875.3035          FAX Number: 215.875.4064   E-Mail Address: pmadden@bm.net

(Civ. 660) 10/02

**Civil Justice Expense and Delay Reduction Plan**
**Section 1:03 - Assignment to a Management Track**

(a)      The clerk of court will assign cases to tracks (a) through (d) based on the initial pleading.

(b)      In all cases not appropriate for assignment by the clerk of court to tracks (a) through (d), the plaintiff shall submit to the clerk of court and serve with the complaint on all defendants a case management track designation form specifying that the plaintiff believes the case requires Standard Management or Special Management. In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a case management track designation form specifying the track to which that defendant believes the case should be assigned.

(c)      The court may, on its own initiative or upon the request of any party, change the track assignment of any case at any time.

(d)      Nothing in this Plan is intended to abrogate or limit a judicial officer's authority in any case pending before that judicial officer, to direct pretrial and trial proceedings that are more stringent than those of the Plan and that are designed to accomplish cost and delay reduction.

(e)      Nothing in this Plan is intended to supersede Local Civil Rules 40.1 and 72.1, or the procedure for random assignment of Habeas Corpus and Social Security cases referred to magistrate judges of the court.

**SPECIAL MANAGEMENT CASE ASSIGNMENTS**
**(See §1.02 (e) Management Track Definitions of the**
**Civil Justice Expense and Delay Reduction Plan)**

Special Management cases will usually include that class of cases commonly referred to as "complex litigation" as that term has been used in the Manuals for Complex Litigation. The first manual was prepared in 1969 and the Manual for Complex Litigation Second, MCL 2d was prepared in 1985. This term is intended to include cases that present unusual problems and require extraordinary treatment. See §0.1 of the first manual. Cases may require special or intense management by the court due to one or more of the following factors: (1) large number of parties; (2) large number of claims or defenses; (3) complex factual issues; (4) large volume of evidence; (5) problems locating or preserving evidence; (6) extensive discovery; (7) exceptionally long time needed to prepare for disposition; (8) decision needed within an exceptionally short time; and (9) need to decide preliminary issues before final disposition. It may include two or more related cases. Complex litigation typically includes such cases as antitrust cases; cases involving a large number of parties or an unincorporated association of large membership; cases  involving requests for injunctive relief affecting the operation of large business entities; patent cases; copyright and trademark cases; common disaster cases such as those arising from aircraft crashes or marine disasters; actions brought by individual stockholders; stockholder's derivative and stockholder's representative actions; class actions or potential class actions; and other civil (and criminal) cases involving unusual multiplicity or complexity of factual issues. See §0.22 of the first Manual for Complex Litigation and Manual for Complex Litigation Second, Chapter 33.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ELIZABETH CRONK, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>GMAC MORTGAGE, LLC,<br><br>Defendant. | Case No.: _____<br><br>COMPLAINT - CLASS ACTION<br><br>JURY TRIAL DEMANDED |

## CLASS ACTION COMPLAINT

Plaintiff Elizabeth Cronk ("Plaintiff" or "Ms. Cronk"), individually and on behalf of a class including all others similarly situated, brings this class action against GMAC Mortgage LLC ("Defendant" or "GMAC"). The following allegations are based on personal knowledge as to Plaintiff's own conduct and are made on information and belief as to the acts of others:

## INTRODUCTION

1.      Plaintiff owns a condominium in a complex in Secaucus, New Jersey. She financed her purchase of this property through a mortgage from First Acceptance Mortgage Corp., which closed on July 10, 2006. The mortgage was assigned to GMAC. GMAC was responsible for dictating the underwriting requirements for the loan to the originator, including confirmation that the property carried the requisite amount of flood insurance.

2.      Defendant GMAC originates, acquires and/or services loans secured by real property located in Special Flood Hazard Areas. These loans include original purchase-money mortgages secured by the property as well as home equity lines of credit ("HELOC").

1

3.     GMAC is engaged in a pattern and practice of forcing owners of individual condominium units whose loans are secured by those units, and are originated or serviced by GMAC, to purchase excessive high-premium flood insurance.  GMAC requires borrowers to purchase flood insurance in excess of that required by federal law and, more importantly, in excess of that required to protect its insurable interest in the collateral.

4.     A typical homeowner's ordeal with GMAC's force-placed flood insurance begins with a notice from GMAC demanding proof of adequate flood insurance, continues with a series of letters asking for more information and explaining GMAC's intention to force-place flood insurance, and culminates with GMAC's purchase and forced placement of a high premium flood insurance policy.  Throughout this process, GMAC misrepresents that its requirement that homeowners obtain additional flood insurance at the homeowner's expense is in line with federal laws for homeowners in "Special Flood Hazard Areas."

5.     GMAC requires borrowers to purchase flood insurance in excess of federal requirements.  Most condominium complexes (including Plaintiff's) are insured through collective Residential Condominium Building Association Policies ("RCBAP"), which insure shared building elements as well as building elements within individual condominium units.  These policies provide complete coverage for losses to individual condominium units pledged as collateral for GMAC's loans, but GMAC force places individual unit coverage ("Dwelling Unit" coverage) on these condominium owners.

6.     Under federal law, the National Flood Insurance Program ("NFIP") will not pay twice for an insurable loss in a condominium complex, even if a particular loss is insured by both an RCBAP and a Dwelling Unit insurance policy.  The NFIP will only pay the replacement cost

2

of a property once.

7.      GMAC force-places homeowners into insurance policies brokered through affiliated entities, including SouthWest Business Corporation.  These force-placed policies can cost four times as much as insurance policies that borrowers obtain independently.

8.      Once GMAC forces a homeowner into one of its affiliate's excessively priced insurance policies, it ensures payment of the premium by paying it and then withdrawing the bill from the mortgagor's escrow account or tacking it onto the HELOC borrower's credit line balance.  As a result, a condominium owner has no choice but to pay the premiums, because they become part of his loan balance, which means GMAC can make negative reports about the borrower with the consumer credit reporting agencies if the borrower fails to pay every penny that GMAC says the borrower owes.

9.      GMAC victimized Plaintiff and members of the proposed Classes with these practices.  At all times relevant to this action, the entire condominium complex where Plaintiff lives has been covered by a RCBAP.  The policy provides flood insurance coverage for the entire condominium complex that is equal to 100% of the replacement cost of the complex, including Plaintiff's individual unit.  Plaintiff pays her portion of the RCBAP insurance premium through her condominium owners' association maintenance payments.

10.     GMAC was aware that Ms. Cronk's condominium complex was covered by a RCBAP.  Ms. Cronk had to provide proof of flood insurance as a prerequisite for closing her original loan and provided additional proof of such insurance in 2011 when GMAC demanded it. GMAC is also aware that the vast majority of condominium complexes are covered by RCBAP policies that meet federal requirements.

3

11.     Nonetheless, GMAC sent Ms. Cronk numerous form letters explaining that she had to provide proof of flood insurance and purchase additional flood insurance in order to meet her obligations under federal law.  After several months of back and forth correspondence, GMAC placed Ms. Cronk in a flood insurance policy, withdrew that premium from her escrow account, and increased her mortgage payment.  This situation is a common phenomenon that has happened to multiple similarly situated persons.

12.     There is no reasonable or good faith explanation for GMAC demanding that Plaintiff secure additional flood insurance on her condominium when she already has flood insurance through the RCBAP.  GMAC forced Plaintiff to spend money needlessly to maintain flood insurance on a piece of property that is already covered by the RCBAP.

13.     These actions constitute a breach of the mortgage contract between the condominium unit owners and GMAC, in that GMAC is imposing a condition not required by any reasonable construction of the contractual provisions relating to the obligation of Plaintiff and class members to carry insurance on the properties in question.  In addition to a breach of the contract itself, GMAC's actions also constitute a breach of the implied covenant of good faith and fair dealing applicable to contracts.  GMAC's actions also constitute conversion, are unconscionable, and violate the New Jersey Consumer Fraud Act, N.J.S.A. §§ 56:8-1, *et seq.*

14.     This complaint seeks disgorgement of all funds paid to GMAC after GMAC force-placed flood insurance on properties that are already insured under the NFIP through RCBAP plans, compensatory damages for all insurance premiums paid to third party insurance plans to avoid GMAC's affiliates' high insurance premiums, treble damages under New Jersey's Consumer Fraud Act, an injunction prohibiting GMAC from force-placing unnecessary flood

4

insurance policies on properties that already have adequate flood insurance as dictated by federal

law, and attorneys' fees and costs pursuant to the New Jersey Consumer Fraud Act, N.J.S.A. §§

56:8-1, *et seq.*

## PARTIES

15.     Elizabeth Cronk is a resident of Secaucus, New Jersey and owns a condominium

there.  Plaintiff financed her condominium purchase through GMAC, and obtained flood

insurance for her property after GMAC force-placed her in a flood insurance plan with an

excessively high premium.

16.     Defendant GMAC is a limited liability company, with its principal place of

business in Fort Washington, PA.  GMAC originates, acquires and/or services mortgage loans

including mortgage loans to New Jersey homeowners.

## JURISDICTION AND VENUE

17.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because

Plaintiff's claims arise under the federal Truth in Lending Act, 12 U.S.C. § 1601, *et seq.*

18.     This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant

to 28 U.S.C. § 1367.

19.     Jurisdiction is also proper in this Court pursuant to the Class Action Fairness Act,

28 U.S.C. § 1332(d)(2) ("CAFA") because the matter in controversy, on information and belief,

exceeds $5,000,000, exclusive of interest and costs, and this action is a class action in which

members of the Class are residents of a different state than that of Defendant.

20.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial

part of the acts, events and/or omissions giving rise to this action took place in this District.

5

## FACTUAL BACKGROUND

**A.**   **The National Flood Insurance Program and Regulations**

21.     GMAC requires borrowers to purchase flood insurance in excess of what is already provided by condominium unit owners' Residential Condominium Building Association Policies ("RCBAP").  Such policies generally provide complete coverage for losses to the individual condominium units pledged as collateral for loans.

22.     When this is the case (as it almost always is), insurance purchased through the federal National Flood Insurance Program ("NFIP") will not pay for any amounts over what is paid under an RCBAP that covers the replacement value for the condominium complex.  So the additional insurance on an individual condominium unit required by GMAC is excessive and unnecessary.

23.     The purpose of NFIP was to reduce the federal government's burden to provide disaster relief to flood prone areas by providing a federal flood insurance scheme.  Payments for flood losses under the NFIP are the exclusive source of insurance payments, and federal agencies tasked with implementing the NFIP, most notably the Federal Emergency Management Agency ("FEMA"), proscribe minimum and maximum limits on how much insurance a homeowner can have and how much the insurance policy will pay in the event of a loss.

24.     In the 1994 Amendments to the National Flood Insurance Act of 1968 ("NFIA"), Congress required lenders to ensure that homeowners had flood insurance for property located in areas designated as Special Flood Hazard Areas ("SFHA") by FEMA.  Lenders are required to ensure that properties in such areas pledged as security for loans have flood insurance equal to the *lesser* of:  (1) the maximum insurance coverage available through the NFIP, which is

6

$250,000 per unit; (2) the outstanding balance of the loan; or (3) the replacement cost of the unit.

25.     In the context of a condominium complex covered by RCBAP, the most that the NFIP will pay in the event of a loss due to flooding is the lesser of: (1) the $250,000 NFIP limit, (2) the outstanding balance of the loan or (3) the "insurable value" of the building.  The "insurable" value of an individual condominium unit is the replacement cost of the entire condominium complex divided by the number of units.  If, for example, the replacement cost of the entire structure is $5,000,000, and there are 20 units, the NFIP limit for each unit is $250,000.  In this example, if the RCBAP provides $5,000,000 in coverage, the lender is requiring useless "excess coverage" if it requires the owner of an individual unit to purchase Dwelling Unit coverage.  This is confirmed in the FEMA FLIP Mandatory Purchase of Flood Insurance Guidelines (September 2007) ("FEMA Guidelines"), at 47:

> The NFIP prohibits duplication of NFIP policies on the same risk.  As described below, both an association and a unit owner may obtain NFIP coverage, but the unit owner's coverage is proscribed in that it is in excess of the association policy.  The combined coverage of the RCBAP and the unit owner Dwelling Form policy cannot exceed the statutory limits or insurable value, whichever is less.

26.     Requiring the borrower to carry flood insurance coverage in an amount that exceeds the replacement value of the collateral creates an "excess insurance" situation where more insurance is required by the lender than is necessary to protect the lender's interest in the collateral.

27.     Worse yet, it creates a situation where the combined insurance coverage between the RCBAP and the individual unit owner's Dwelling Coverage exceeds the amount that NFIP will pay in the event of a loss due to flooding.  There is no good faith basis for a lender to require excess coverage that is of no benefit to the borrower or the lender in the event of a flood loss to

7

the collateral.

28.     The FEMA Guidelines make clear that "[w]here the outstanding principal balance of the loan exceeds the insurable value of the building, the insurance amount should be the insurable value of the building rather than the outstanding principal balance on the loan." Otherwise, "the insured may be paying for coverage that exceeds the amount the NFIP will pay in the event of a loss."   This section of the FEMA Guidelines concludes:  "Lenders should avoid creating such a situation."  FEMA Guidelines, *supra* at 27.   *See also* 74 Fed. Reg. 35914, 35936 (July 21, 2009) ("lenders should avoid creating situations where a building is 'over-insured.'").

29.     Based on information from the Condominium Flood Workgroup, FEMA determined several years ago that of 78,743 RCBAP policies in force, 93.1% were insured for at least 80% of the insured value.[1]  If the RCBAP policy provides coverage for 80% of the replacement value on an individual condominium unit, the NFIP will pay 100% of the replacement cost in the event of a loss.  So, the lender requires useless and unnecessary coverage if Dwelling Unit coverage is required in addition to the RCBAP if the RCBAP provides coverage for at least 80% of the replacement cost of the condominium building – which almost all RCBAP policies do.

30.     The FEMA Guidelines make it clear that the RCBAP alone is designed to protect the interests of lenders that make loans secured by individual condominium units:

_____

[1] This was at some point prior to early 2008.  At that time, compliance with the NFIP flood insurance coverage requirements was adequate if the RCBAP policy provided coverage of at least 80% of replacement cost.  Subsequent Question and Answer Combined Guidelines issued by the Department of the Treasury, FDIC, Farm Credit Administration, National Credit Union Administration, and Federal Reserve System indicate that RCBAP policies should cover 100% of replacement cost.  So, today, more RCBAP policies cover a greater portion of replacement cost than when this determination was made.

8

> Because the RCBAP provides flood insurance protection for both the building
> elements within the unit and the common building elements, the security interests
> of individual unit owner mortgagees should be protected, so long as coverage
> amounts reflect insurance to value, as with other forms of property insurance.

FEMA Guidelines, *supra* at 46. The Guidelines also state that the RCBAP "is the correct way to

insure a residential condominium building against flood loss" and that the RCBAP "protects the

financial interests of the association, unit owners, and lenders and also satisfies the statutory

requirements." *Id. See also* Guidelines at 47 ("The entire residential condominium building is

covered under the RCBAP, including both common building elements and individually owned

building elements within the units, improvements within the units, and personal property owned

in common if contents coverage is carried."). Thus, there simply is no rational basis for the

lender to require additional flood insurance coverage if the RCBAP already provides the amount

necessary to protect the collateral.

31. GMAC misrepresents to its customers that federal law requires them to obtain

flood insurance in amounts dictated by GMAC when, in reality, GMAC forces condominium

owners to purchase flood insurance that the federal government will not pay in the event of flood

loss claims, which is explicitly prohibited by federal regulations. GMAC force-places

consumers into flood insurance that duplicates their RCBAP policies and creates situations of

double insurance.

**B.      GMAC Force-Placed Plaintiff and Class Members Into Unnecessary and Inflated
Flood Insurance**

32. Plaintiff Elizabeth Cronk obtained a mortgage from First Acceptance Mortgage

Corp. to purchase her condominium at 447 Dunlin Plaza in Secaucus, New Jersey on July 10,

2006. The underwriting requirements for the loan, including the requirement that the requisite

9

amount of flood insurance exist for the property at the time of the loan, were dictated by GMAC.

33.    Plaintiff's mortgage was assigned to GMAC at or around the same time as the execution of the original mortgage on July 10, 2006.

34.    Plaintiff also obtained a HELOC on her property from GMAC for future withdrawals against the line of credit.

35.    At the time of closing for these loans, GMAC required, and Ms. Cronk provided to the closing lender, a certificate of insurance to ensure that the loans complied with GMAC's requirements and the requirements of federal law, including the requirement of adequate flood insurance coverage.

36.    A July 10, 2006 "Condominium Rider" was "incorporated into and "deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed …of the same date" given by Plaintiff to secure her note.  The "Condominium Rider" provides, *inter alia*:

> B.  Property insurance.  **So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "Blanket" policy on the Condominium Project** which is satisfactory to lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including but not limited to, earthquakes and floods, from which lender requires insurance, **then: (i) Lender waivers the provision in Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.** What Lender requires as a condition of this waiver can change during the term of the loan. (emphasis added).

37.    The condominium owners' association for the condominium complex known as Harmon Cove II (where Plaintiff's condominium is located) was insured through an RCBAP.

38.    Plaintiff was required to provide proof of such coverage prior to closing on her

10

mortgage and HELOC.  Defendant was satisfied by Plaintiff's coverage through the RCBAP and closed on the loans.

39.     More than four years after closing on the loans, Plaintiff received notice from GMAC starting in January 2011 that stated that her mortgaged property would require additional flood insurance on her individual condominium unit.

40.     GMAC's notices indicated that if Plaintiff did not provide proof of flood insurance within a specified time frame, GMAC would enroll her in a flood insurance policy with one of GMAC's affiliates.

41.     In response to the initial inquiry, Plaintiff obtained a copy of the condominium complex's RCBAP and had the condominium association's insurance broker provide a copy to GMAC on January 12, 2011.  The declaration pages of the RCBAP demonstrated that the complex was covered by $53,032,500 in flood insurance from Selective Insurance Company of America, Ltd. – an amount that equals 100% of the replacement value of the complex.

42.     Notwithstanding Plaintiff's notice to and offer of proof to GMAC, GMAC sent another letter on January 16, 2011, stating that "due to the fact that your property, on which we hold a mortgage, is located in a SFHA, the terms of your mortgage and/or federal law require you to purchase adequate flood insurance.  Our loan file does not contain evidence of enough flood insurance in force on your property."  The letter further states that, absent such proof, GMAC would force-place her into a high premium insurance policy.

43.     On information and belief, GMAC has made the same or similar misstatements to thousands of members of the proposed Classes.

44.     Plaintiff's notice to GMAC and unsuccessful attempts to show GMAC that the

11

high-premium flood insurance policy GMAC was seeking to impose on Plaintiff was unnecessary and outside the terms of the contract, provided GMAC with notice that GMAC's conduct constituted a breach.

45.     Plaintiff has provided GMAC ample opportunity and a reasonable period to take corrective action.

46.     Plaintiff's property was force-placed with flood insurance through one of GMAC's affiliates, Southwest Business Corporation, on March 6, 2011.

47.     Plaintiff was charged for these unnecessary flood insurance premiums and paid an inflated rate for the unnecessary premiums.

48.     GMAC withdrew these premium payments directly from Plaintiff's mortgage escrow account on or around March 4, 2011.  Ms. Cronk's mortgage payment increased as a result.  Ms. Cronk had no choice but to make GMAC's excessive payment after it added it to her mortgage payment to avoid possible foreclosure and having her account reported delinquent to the three consumer credit reporting agencies.

49.     GMAC's statement that "the terms of your mortgage and/or federal law require you to purchase adequate flood insurance.  Our loan file does not contain evidence of enough flood insurance in force on your property" is false and misleading.  GMAC had evidence of adequate flood insurance coverage on the condominium complex because Plaintiff was required to demonstrate such coverage, and in fact demonstrated such coverage, as a condition for closing on her condominium.  Moreover, GMAC also had information of adequate coverage because Plaintiff had the condominium association provide the RCBAP to GMAC on January 12, 2011.  Additionally, the statement is false and misleading because it is contrary to the terms of the

12

mortgage, including the "Condominium Rider."

50.     Defendant did not and cannot identify any changes in the mortgage documents or circumstances surrounding the loan that justify Defendant's representations that Plaintiff's coverage was suddenly not "adequate."

51.     On information and belief, GMAC made identical or similar misstatements to thousands of members of the proposed Classes in order to justify force-placing them into duplicative and excessive flood insurance policies for their individual condominium units.

C.     **GMAC's Practices**

52.     GMAC ties insurance products in with its home equity financing.

53.     GMAC enforces this tie in an arbitrary fashion without regard to whether a particular borrower needs flood insurance in the amounts dictated by GMAC.

54.     On information and belief, GMAC makes its decision to force flood insurance together with its affiliate Southwestern Business Corp. based on a federal register of homes located in flood prone areas, primarily by reference to areas designated by FEMA as an SFHA.

55.     After determining that a particular home is in an SFHA, GMAC requires borrowers to purchase flood insurance in excess of what is necessary to meet the requirements of federal law or to protect its interest as a mortgagee.

56.     GMAC's affiliates charge insurance premiums that can be nearly four times the cost of obtaining the same insurance from an independent insurance company, even though those insurance policies are, as described in GMAC's own letters to Ms. Cronk, limited compared with independently written insurance policies.

57.     GMAC is aware that condominium owners' property is insured through collective

13

RCBAP policies, but still force-places additional flood insurance on their properties even after condominium owners provide GMAC with proof of insurance.

58.     GMAC is aware that the vast majority of condominium complexes are covered by RCBAP policies and that its interest in individual units pledged as security for loans it makes and services is protected by the RCBAP policies.  GMAC was aware that there was adequate RCBAP coverage on Plaintiff's condominium building.  Plaintiff herself provided information to GMAC regarding the RCBAP coverage, both as a prerequisite for closing her mortgage and HELOC, and when GMAC began demanding proof of insurance in 2011.

59.     GMAC has the means and ability to easily determine the extent to which the individual units pledged as collateral for loans are protected by a RCBAP, so as not to require a borrower to purchase excess insurance coverage over that necessary to protect the collateral from loss or damage due to flood.

60.     Since October 1, 2007, it has been even easier for GMAC to determine the extent to which RCBAP policies protect its interest in the individual condominium units pledged as security.  This is because, since that date, the Declarations Page of each RCBAP issued or renewed must show the building's replacement cost value and the number of units within that building.  Before that date, GMAC still had an obligation to make this determination and not to require borrowers to carry unnecessary excess insurance coverage.

61.     GMAC sends out generic notices to borrowers, including Plaintiff, stating that the borrower must obtain insurance coverage in amounts dictated by GMAC.  The amount of coverage that GMAC dictates and requires of borrowers, whether their loan is secured by a condominium unit or some other SFHA property, exceeds that required by federal law, as

14

discussed in throughout this Complaint.  It exceeds what is necessary to protect GMAC's interest

in the collateral pledged as security.

62.     The relevant mortgage agreements, including Plaintiff's, provide that the

borrower will carry insurance on the collateral.  Plaintiff complied with the obligation to carry

flood insurance on her condominium unit through the RCBAP applicable to her condominium

complex.  To the extent that GMAC sought to impose coverage requirements beyond that

necessary to protect its insurable interest in the placement value of the unit, GMAC breached its

contract with Plaintiff and all similarly situated owners of condominium units whose loans

GMAC services.

63.     Plaintiff and members of the proposed Classes pay condominium association

maintenance payments that fund RCBAP coverage equal to the replacement value of the

property.  Nonetheless, GMAC "force-placed" a high premium flood insurance policy on

Plaintiff's condominium after she purchased it.

64.     GMAC ensures that its borrowers will pay GMAC's affiliates' exorbitant

insurance premiums by tacking the payments onto their borrowers' HELOC balances or

withdrawing the funds directly from the borrowers' escrow accounts.  These actions force

borrowers to make the payments or GMAC will report the GMAC-manufactured delinquencies

to the consumer credit reporting agencies and potentially even foreclose on their properties.

65.     Defendant engages in the above practices in order to reap improper financial gain

from their customers.

66.     By tacking its affiliates' flood insurance premiums onto homeowners' home

equity line of credit balances and withdrawing its affiliates' insurance premiums directly from

15

mortgage borrowers' escrow accounts, GMAC derives interest income on the increased loan balance, and fee income, such as late payment fees, where applicable.

67.     On information and belief, GMAC has a mutually beneficial financial relationship with affiliate insurance brokers.  Southwest Business Corp. ("SWBC") is an example of one of GMAC's affiliates.

68.     SWBC provides lender-placed programs to more than 600 financial institutions nationwide.  SWBC claims that "no matter your loan portfolio size, SWBC's expertise in risk management products, processes, and technology design allows you to maintain the proper balance between growth, customer value, service, and profitability."  As SWBC's statement provides, its force-placed programs are specifically designed to provide GMAC (and others) with "growth" and "profitability."

69.     In summary, GMAC forces homeowners to obtain unnecessary insurance policies, then forces them into policies with high premiums where companies affiliated with GMAC receive premiums and commissions, while GMAC directly receives interest payments from borrowers on these debts that GMAC created for the customer.  Alternatively, class members have the option of purchasing lower cost, but still unnecessary, flood insurance to avoid lining GMAC's and GMAC's affiliates' pockets, that is providing GMAC with "growth" and "profitability."

70.     On information and belief, discovery will reveal other direct and indirect financial benefits and incentives that accrue to GMAC as a result of its unfair, unlawful, and unconscionable conduct as set forth above.

## CLASS ACTION ALLEGATIONS

71.     Plaintiff brings this action on behalf of herself and all others similarly situated and

asks the Court to certify this case as a class action pursuant to Rule 23 of the Federal Rules of

Civil Procedure.

72.     This action satisfies the Rule 23 requirements of numerosity, commonality,

typicality, adequacy, predominance, and superiority.

73.     Plaintiff asserts COUNT I (breach of contract), COUNT II (Truth in Lending),

COUNT III (unconscionability), and COUNT IV (conversion) on behalf of a proposed

Nationwide Class (the "Nationwide Class") defined as:

> All persons with loans financed or serviced by GMAC and who were required to
> purchase flood insurance which, when combined with any RCBAP coverage or
> other primary coverage on the property, exceeded any of the following: (1)
> $250,000; (2) the replacement cost value of the property pledged as security for
> the loan, or; (3) the total outstanding loan balance (if a traditional loan) or
> maximum line of credit (if a home equity line of credit).

74.     Plaintiff asserts COUNT V (New Jersey Consumer Fraud Act) and COUNT VI

(New Jersey Truth in Consumer Contracts Act) on behalf of a proposed New Jersey class (the

"New Jersey Class") defined as:

> All persons residing in New Jersey or who own property in New Jersey with loans
> financed or serviced by GMAC and who were required to purchase flood
> insurance which, when combined with any RCBAP coverage or other primary
> coverage on the property, exceeded any of the following: (1)  $250,000; (2) the
> replacement cost value of the property pledged as security for the loan, or; (3) the
> total outstanding loan balance (if a traditional loan) or maximum line of credit (if
> a home equity line of credit).

75.     The Nationwide Class and the New Jersey Class (collectively, the "Classes") are

composed of thousands of mortgage or HELOC borrowers whose home financing was originated

and/or serviced through GMAC, the joinder of which in one action would be impracticable.  The

disposition of the claims of the proposed class members through this class action will benefit the

parties and the Court.  The identities of individual members of the proposed Classes are readily

ascertainable through the Defendant's account records.

76.     The members of the proposed Classes are so numerous that individual joinder is

impracticable.  The actual number of Class members is unknown at this time, but on information

and belief, will likely number in the thousands.  The identities of individual members of the

proposed Classes are within the knowledge of GMAC and can be ascertained using GMAC's

records.

77.     Plaintiff's claims are typical of the claims of the proposed Classes, in that

Plaintiff, like all Class members, was forced into a high-premium flood insurance policy and

ultimately was forced to purchase unnecessary and excessive flood insurance.  Plaintiff and all

members of the Classes suffered damages in the form of costs associated with the purchase and

maintainence of these high-premium policies.

78.     Plaintiff will fairly and adequately protect the interests of the Classes.  Plaintiff

has retained experienced counsel with the necessary expertise and resources to prosecute a

nationwide consumer class action.  Plaintiff and her counsel do not forsee any circumstances

where the interests of Plaintiff would be adverse to those of the Classes.

79.     Common questions of law and fact exist as to all members of the Classes, which

predominate over any questions affecting solely individual members of the Classes.  Questions

of law and fact common to the Classes include, without limitation:

(a)     whether Defendant has a policy and practice of misrepresenting to their

18

customers that federal law requires additional flood insurance on mortgages or HELOCs for which such additional flood insurance is not required by law;

(b)     whether Defendant's standard flood insurance notice letters are false, misleading, and/or deceptive;

(c)     whether Defendant breached its mortgage agreements with customers by demanding and force-placing unauthorized amounts of flood insurance or amounts that were not provided for in the mortgage agreements;

(d)     whether Defendant's agreements comply with all mandated consumer disclosures under TILA;

(e)     whether Defendant's agreements are void in their entirety under TILA;

(f)     whether Defendant's conduct constitutes an "unconscionable commercial practice" under the New Jersey Consumer Fraud Act; and

(g)     the proper measure of damages.

80.     There are numerous questions of law and fact common to the proposed Classes and those common questions predominate over any questions affecting only individual class members.

81.     All class members have suffered damages as a result of a "common wrong" on the part of GMAC.  Damages are ascertainable by reference to GMAC's own records and records of the class members, including Plaintiff.

82.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  It would be economically impractical for Plaintiff and members

19

of the Classes to pursue individual actions against GMAC as the costs of prosecution would likely surpass their individual damages. Defendant continues to engage in the unlawful, unfair, and unconscionable conduct that is the subject of this Complaint. Class treatment of Plaintiff's claims will permit Plaintiff and the Classes to vindicate their rights against GMAC, and conserve the resources of the Court and the Parties. Class treatment would also avoid the possibility of inconsistent outcomes that could result from a multitude of individual actions in varying jurisdictions nationwide.

## CAUSES OF ACTION

### COUNT I
### Breach of Contract
### (on behalf of proposed Nationwide Class)

83.     Plaintiff restates and incorporates the preceding paragraphs of the Complaint.

84.     Plaintiff entered into a mortgage contract with First Acceptance Mortgage Corp. GMAC directed the terms of this contract and purchased it from First Acceptance Mortgage Corp. thereby assuming all rights and responsibilities of First Acceptance Mortgage Corp. under that contract.

85.     The contract provides, in pertinent part, that:

B. Property insurance. **So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "Blanket" policy on the Condominium Project** which is satisfactory to lender and which provides insurance coverage in the amounts (including deductable levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including but not limited to, earthquakes and floods, from which lender requires insurance, **then: (i) Lender waivers the provision in Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is**

20

provided by the Owners Association policy.

86.     Prior to and as a condition to closing, Plaintiff provided her RCBAP that demonstrated the property had adequate flood insurance coverage.  Plaintiff also provided GMAC with notice and proof in January 2011 that RCBAP was equal to 100% of the replacement value of the property.

87.     GMAC breached its contract with Plaintiff by requiring her to purchase and additional and excessive flood insurance that was not required under the contract.

88.     Additionally, the law implies into every contract an obligation of good faith and fair dealing, the purpose of which is to prevent one party's conduct under the contract from impeding the other party's performance of that contract.

89.     GMAC's actions constitute a breach of its duty of good faith and fair dealing in that, to the extent that GMAC had any discretion under the contract, they exercised that authority in bad faith by imposing unnecessary insurance on Plaintiff's mortgage without regard for the fact that GMAC's insurable interest was protected by RCBAP.  As a result, GMAC wrongfully withdrew money from Plaintiff's mortgage escrow account, and forced her to make this wrongfully increased payment with the implicit threat of negative credit reporting, thereby impeding her ability to continue meeting her obligations according to the terms of the contract.

90.     On information and belief, GMAC has replicated these actions with respect to all members of the Classes as part of a scheme to wrongfully increase income to it and its affiliates.

91.     Plaintiff and the Classes are entitled to compensatory damages resulting from GMAC's wrongful actions in breach of their mortgage contracts and HELOC contracts and in violation of GMAC's obligation of good faith and fair dealing in performing under the contracts.

21

## COUNT II
### Violation of the Truth in Lending Act, 15 U.S.C. § 1601, *et seq.*
### (on behalf of proposed Nationwide Class)

92.     Plaintiff restates and incorporates the preceding paragraphs of the Complaint.

93.     Congress' objective in passing the Truth in Lending Act ("TILA"), 15 U.S.C. §
1601 *et seq.*, was to ensure that the true cost of goods and services be fully and completely
disclosed to the consumer in writing prior to the consumer's purchase and agreement to those
terms.

94.     Residential mortgage loan agreements and line of credit agreements are subject to
the disclosure requirements of TILA and all related regulations, commentary, and interpretive
guidance promulgated by the Federal Reserve Board.

95.     GMAC is a "creditor" as defined by the TILA

96.     As a creditor, TILA requires GMAC to timely disclose all finance charges, other
charges, and third-party charges that may be imposed in connection with a mortgage loan or line
of credit.

97.     TILA thus requires GMAC to make these disclosures clearly and conspicuously.

98.     TILA further requires GMAC to accurately and fully disclose the terms of the
legal obligation between the parties.

99.     GMAC violated the TILA by, *inter alia*, (i) adversely changing the terms of
mortgage loans or credit lines after origination without consent and demanding more insurance
than previously required in amounts greater than necessary to protect its interest in the propriety;
and (ii) failing to provide proper notice, after origination, that GMAC was amending the terms of
loans or credit lines as described in the relevant mortgage documents.

100.     The TILA violations set forth above occurred within one year of the commencement of this action.  To the extent that the violations described above occurred earlier, Plaintiff did not discover and did not have a reasonable opportunity to discover GMAC's violations until less than one year before this action commenced.  Prior to this time, Plaintiff had no reason or opportunity to complain about GMAC's TILA violations because it was not yet apparent that GMAC's disclosures were incomplete, inaccurate, and misleading.

101.     Plaintiff's TILA claim is timely.  The statute of limitations on Plaintiff's TILA claim did not begin to run and/or was equitably tolled until such time that she had a reasonable opportunity to discover GMAC's TILA violations and complain about such violations.  It would be manifestly unjust and inconsistent with the purposes of the TILA to apply and enforce an earlier accrual date for Plaintiff's TILA claim.

102.     GMAC systematically and pervasively engaged in similar violations of the TILA to the detriment of other members of the proposed Nationwide Class.

103.     Plaintiff and the proposed Nationwide Class have been injured and have suffered monetary losses as a result of GMAC's violations of the TILA.

104.     As a result of GMAC's violations, Plaintiff and the proposed Nationwide Class are entitled to recover actual damages and a penalty of $500,000.00 or 1% of Defendant's net worth, as provided by 15 U.S.C. § 1640(a)(l)-(2).

105.     Plaintiff and the proposed Nationwide Class are also entitled to recover attorneys' fees and costs to be paid by GMAC, as provided by 15 U.S.C. § 1640(a)(3).

## COUNT III
### Unconscionability
### (on behalf of proposed Nationwide Class)

106.    Plaintiff restates and incorporates the preceding paragraphs of the Complaint.

107.    GMAC's conduct described herein is substantively and procedurally unconscionable in the following respects, among others:

a)    GMAC did not disclose its insurance requirements at the time of closing and, in fact, represented that condominium owners' existing RCBAP flood insurance coverage was sufficient at the time of closing, in that such coverage was, by law, a prerequisite for obtaining GMAC financing in the first place;

b)    GMAC force-placed condominium owners into its affiliates' flood insurance policies even after condominium owners provided proof of their RCBAP coverage;

c)    GMAC's affiliates charged premiums as much as four times as costly as and substantially more limited than flood insurance that a condominium owner could purchase from an independent insurance company;

d)    GMAC withdrew these premiums from customers' escrow accounts or added them to customers' HELOC credit line balances such that they became a part of the customers' loan obligation, which made them subject to negative credit reporting;

e)    Nowhere in GMAC's mortgages or HELOCs is there any indication that GMAC will ever require a homeowner to obtain flood insurance greater than the minimum requirements of the NFIP, although GMAC force-places customers into such excessive coverage anyway; and

f)    Nowhere in GMAC's mortgages or HELOCs is there any indication that a

24

homeowner will be forced to purchase flood insurance that duplicates protection already provided by the homeowner's condominium owners' association RCBAP policy.

108.    Considering the great business acumen and experience of GMAC in relation to Plaintiff and the Nationwide Class, the great disparity in the parties' relative bargaining power, the inconspicuous and incomprehensible nature of the contract language involved, the oppressiveness of the terms and GMAC's application of them, the commercial unreasonableness of the contract terms, the purpose and effect of the terms, the allocation of risk between the parties, and similar public policy concerns, these provisions are unconscionable and, therefore, unenforceable as a matter of law.

109.    The imposition of flood insurance when a customer already has flood insurance through a RCBAP policy is itself unconscionable.

110.    If the mortgage or HELOC agreements at issue are understood to allow any of these practices, that contract is unconscionable.

111.    Plaintiff and members of the proposed Nationwide Class who paid excessive and unnecessary flood insurance premiums are entitled to rescission and restitution as a result of GMAC's unconscionable policies and practices as alleged herein.

**COUNT IV**
**Conversion**
**(on behalf of proposed Nationwide Class)**

112.    Plaintiff restates and incorporates the preceding paragraphs of the Complaint.

113.    GMAC had and continues to have a duty to maintain and preserve its customers' mortgage accounts, HELOC accounts, and mortgage escrow accounts, and to prevent their diminishment or alteration through its own wrongful acts.

25

114.   GMAC wrongfully collected insurance premiums from its customers' mortgage escrow accounts or added such payments to its customers' HELOC accounts.

115.   GMAC collected these premiums by wrongfully taking specific and readily identifiable funds from their mortgage customers' escrow accounts or misappropriating funds paid to their HELOC customers' account balances.

116.   GMAC has assumed and exercised the right of ownership over these funds without authorization to do so and in hostility to the rights of Plaintiff and members of the proposed Nationwide Class without legal justification.

117.   GMAC retains these funds unlawfully without consent of Plaintiff or members of the proposed Nationwide Class.

118.   GMAC intends to permanently deprive Plaintiff and members of the proposed Class of these funds.

119.   Plaintiff and members of the proposed Nationwide Class properly own these funds, not GMAC, which now claims that it is entitled to their ownership contrary to the rights of Plaintiff and members of the proposed Nationwide Class.

120.   Plaintiff and members of the proposed Nationwide Class are entitled to the immediate possession of these funds.

121.   GMAC has wrongfully converted these specific and readily identifiable funds.

122.   GMAC's wrongful conduct is of a continuing nature.

123.   As a direct and proximate result of GMAC's wrongful conversion, Plaintiff and members of the proposed Nationwide Class have suffered and continue to suffer damages.

124.   As a result of GMAC's actions constituting conversion, Plaintiff and members of

26

the proposed Nationwide Class have suffered actual damages for which Defendant is liable.

Defendant's liability should be measured by the extent of GMAC's conversion.

125.    These wrongfully collected funds are specific and readily identifiable.

## COUNT V
### Violation of New Jersey Consumer Fraud Act N.J.S.A. 56:8-1 et seq.
### (On behalf of proposed New Jersey Class)

126.    Plaintiff restates and incorporates the preceding paragraphs of the Complaint.

127.    The New Jersey Consumer Fraud Act ("CFA") is a consumer protection statute

designed to protect consumers from a wide variety of marketplace tactics and practices.  The

CFA provides that that "[a]ny person who suffers any ascertainable loss . . . , as a result of the

use or employment by another person of any method, act, or practice declared unlawful under

this act, may bring an action . . . in any court of competent jurisdiction."  N.J.S.A. § 56:8-19.

128.    "Unlawful acts" under the CFA include:

> The act, use or employment by any person of any unconscionable commercial
> practice, deception, fraud, false pretense, false promise, misrepresentation, or the
> knowing, concealment, suppression, or omission of any material fact with intent
> that others rely upon such concealment, suppression, or omission, in connection
> with the sale or advertisement of any merchandise . . . or with the subsequent
> performance of such person . . . , whether or not any person has in fact been
> misled, deceived or damaged thereby, is declared to be an unlawful practice.

N.J.S.A. § 56:8-2.

129.    Plaintiff, New Jersey Class members and Defendant all qualify as "persons" under

the CFA.  N.J.S.A. § 56:8-1(d).

130.    Defendant engaged in unlawful conduct through affirmative acts, including

affirmatively misrepresenting to Plaintiff and New Jersey Class members that they were required

to procure additional flood insurance and procuring flood insurance at inflated rates for plaintiff

27

when such insurance was unnecessary.

131. Defendant's conduct constitutes unconscionable commercial practice pursuant to N.J.S.A. § 56:8-2.

132. Defendant's conduct described herein constitutes the employment of false pretense, false promise, misrepresentation, misleading statement or deceptive practice upon Plaintiff and the New Jersey Class members within the meaning of the CFA.

133. Plaintiff and New Jersey Class members suffered an ascertainable loss as a result of Defendant's unlawful conduct.

134. Plaintiff and New Jersey Class members are entitled to three times their ascertainable losses pursuant to N.J.S.A. §§ 56:8-19. In addition, GMAC's conduct is subject to an award of attorney fees and costs and any other appropriate legal or equitable relief as provided under N.J.S.A. 56:8-19.

135. Plaintiff and New Jersey Class members seek court-ordered relief of an equitable nature against Defendant, including, but not limited to, orders declaring Defendant's practices as alleged to be unlawful, unfair, unconscionable and/or deceptive, and enjoining Defendant from undertaking any further unlawful, unfair, unconscionable and/or deceptive acts or omissions.

136. Plaintiff and New Jersey Class members seek disgorgement and restitution of all insurance premiums and brokerage fees paid to or withdrawn by GMAC for unnecessary flood insurance through GMAC affiliates' insurance policies, plus interest on damages at the legal rate, as well as three times the amount of their economic damages, and attorneys' fees and costs.

28

<u>COUNT VI</u>
**Violation of the New Jersey Truth-in-Consumer Contracts Act, N.J.S.A. § 56:12-14, *et seq.***
**(On behalf of proposed New Jersey Class)**

137.   Plaintiff restates and incorporates the preceding paragraphs of the Complaint.

138.   Under the New Jersey Truth-in-Consumer Contracts Act ("NJTCCA"):

> No seller, lessor, creditor, lender or bailee shall in the course of his business offer
> to any consumer or prospective consumer or enter into any written consumer
> contract . . . which includes any provision that violates any clearly established
> legal right of a consumer or responsibility of a seller, lessor, creditor, lender, or
> bailee as established by State or Federal law at the time the offer is made or the
> consumer contract is signed . . . .

N.J.S.A. 56:12-15.

139.   Plaintiff is a "consumer" under the NJTCCA because she bought a service which

is primarily for personal, family or household purposes.

140.   GMAC is a "seller, lessor, creditor, lender, or bailee" under the NJTCCA.

141.   GMAC's conduct described herein is substantively and procedurally

unconscionable.  The imposition of flood insurance when a customer already has flood insurance

through a RCBAP policy is itself unconscionable.  If the mortgage or HELOC agreements at

issue are understood to allow any of these practices, that contract is unconscionable.

142.   The mortgage and/or HELOC agreements thus violate the New Jersey Consumer

Fraud Act and federal TILA.

143.   Forcing consumers to purchase high premium flood insurance when they already

have sufficient flood insurance is an unconscionable commercial practice made unlawful by the

New Jersey Consumer Fraud Act.

144.   Similarly, to the extent that GMAC violated the federal TILA and the New Jersey

29

Consumer Fraud Act, as set forth above, violation of those rights is a violation of the NJTCCA.

145.    Plaintiff and members of the New Jersey Class, thus seek a civil penalty and actual damages together with attorneys' fees and court costs.  Plaintiff and the New Jersey Class further seek to void their contracts with Defendant.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the proposed Classes, prays for relief as follows:

A.    That this action may proceed as a class action under Fed. R. Civ. P. 23(b)(3), that Plaintiff be appointed as the class representative, and that Plaintiff's counsel be appointed as counsel for the proposed Classes;

B.    That Plaintiff and the proposed Classes recover the damages determined to have been sustained by them, trebled as provided by law, with any applicable civil penalties, and that judgment be entered against Defendant on behalf of Plaintiff and each and every member of the Classes;

C.    That Defendant, its subsidiaries, affiliates, successors, transferees, assignees and the respective officers, directors, partners, agents, and employees and all other persons acting or claiming to act on their behalf, be permanently enjoined and restrained from continuing and maintaining its unlawful conduct alleged in this Complaint;

D.    That Plaintiff and members of the proposed Classes be awarded prejudgment and postjudgment interest, and that such interest be awarded at the highest legal rate from and after the date of service of the Complaint in this action;

E.    That Plaintiff and the Classes recover their costs of this suit, including attorneys'

fees and costs, as provided by law; and

      F.    That the Court direct all such further relief that it deems just and appropriate.

## DEMAND FOR JURY TRIAL

      Plaintiff demands a trial by jury as to all claims so triable.

Dated: August 12, 2011             Respectfully submitted,

                       Eric L. Cramer, Atty ID # 69289
                       Shanon J. Carson, Atty ID # 85957
                       Patrick F. Madden, Atty ID # 309991
                       BERGER & MONTAGUE, P.C.
                       1622 Locust Street
                       Philadelphia, PA  19103
                       Telephone: (215) 875-4656
                       Facsimile: (215) 875-4604
                       ecramer@bm.net
                       scarson@bm.net
                       pmadden@bm.net

                       David M. Taus
                       DEVERO TAUS LLC
                       211 Somerville Road, Suite B
                       Bedminster, New Jersey 07921
                       Telephone:  (908) 375-8142
                       Facsimile:  (908) 375-8151
                       dtaus@deverotaus.com

                       Brett Cebulash, Esq.
                       Kevin Landau, Esq.
                       TAUS, CEBULASH & LANDAU, LLP
                       80 Maiden Lane, Suite 1204
                       New York, NY 10038
                       Telephone: (212) 931-0704
                       Facsimile: (212) 931-0703
                       bcebulash@tcllaw.com
                       klandau@tcllaw.com

31

Brent Walker
CARTER WALKER PLLC
2171 West Main Street, Suite 200
Cabot, AR 72023
Telephone: (501) 605-1346
Facsimile: (501) 605-1348
bwalker@carterwalkerlaw.com

Steven A. Owings
OWINGS LAW FIRM
1400 Brookwood
Little Rock, AR 72202
Telephone:  (501) 661-9999
Facsimile: (501) 661-8393
sowings@owingslawfirm.com

Kendall S. Zylstra
Richard Schwartz
FARUQI & FARUQI, LLP
101 Greenwood Avenue
Suite 600
Jenkintown, PA  19046
Telephone: (215) 277-5770
Facsimile: (215) 277-5771
kzylstra@faruqilaw.com
rschwartz@faruqilaw.com