**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

—————————————————————
                                                    :
ELIZABETH CRONK, individually and on  :
behalf of all others similarly situated,       :       Case No.: 2:11-cv-5161
                                                    :
            Plaintiff,                          :
                                                    :
        v.                                        :
                                                    :
GMAC MORTGAGE, LLC,                    :
                                                    :
            Defendant.                         :
—————————————————————  :

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
THE MOTION TO DISMISS OF DEFENDANT GMAC MORTGAGE, LLC**

Eric L. Cramer, Attorney I.D. No. 69289
Shanon J. Carson, Attorney I.D. No. 85957
Patrick F. Madden, Attorney I.D. No. 309991
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA  19103
Telephone: (215) 875-4656
Facsimile: (215) 875-4604

*Attorneys for Plaintiff*

## Table of Contents

I.      INTRODUCTION .................................................................................................. 1

II.     STATEMENT OF ALLEGED FACTS ................................................ 4

III.    ARGUMENT ................................................................................ 8

   A.   THE COMPLAINT STATES A CLAIM FOR BREACH OF CONTRACT .................... 9

     1.   The Complaint Alleges All Elements Of A Breach Of Contract Claim .......................... 9

     2.   Plaintiff Had Full Replacement Coverage Under The RCBAP And Any Argument To The Contrary Raises Issues For Discovery .................................................. 11

     3.   The Complaint States A Claim For Breach Of The Implied Covenant Of Good Faith And Fair Dealing .................................................................... 15

     4.   The Mortgage And The NFIA Do Not Preclude Plaintiff's Claim For Breach Of The Implied Covenant Of Good Faith And Fair Dealing .................................. 17

   B.   THE COMPLAINT STATES A CLAIM FOR CONVERSION ...................................... 18

     1.   The Complaint Alleges All Elements Of A Conversion Claim .................................... 18

     2.   No Contract Or Statute Authorized GMAC's Conversion Of Funds............................ 20

   C.   THE COMPLAINT STATES A CLAIM UNDER THE CFA ......................................... 21

     1.   The Complaint Alleges All Elements Of A CFA Claim ............................................... 21

     2.   The Mortgage's Terms Do Not Defeat Plaintiff's CFA Claim .................................... 24

   D.   THE ECONOMIC LOSS RULE DOES NOT PRECLUDE PLAINTIFF'S CONVERSION OR CFA CLAIMS ................................................................. 25

   E.   THE COMPLAINT STATES A CLAIM FOR UNCONSCIONABILITY ...................... 27

   F.   THE COMPLAINT STATES A CLAIM UNDER TILA................................................. 29

     1.   GMAC Violated 12 C.F.R. § 226.17(c) By Misrepresenting The Terms Of The Legal Obligations Between The Parties .................................................. 30

     2.   GMAC Violated 12 C.F.R. § 226.18 By Failing To Provide Plaintiff With New Credit Disclosures ...................................................................... 32

     3.   Plaintiff's TILA Claims Are Timely............................................................................ 33

     4.   GMAC Is A Proper Defendant Under TILA................................................................ 34

     5.   GMAC Cannot Avail Itself Of The "Safe-Harbor" Provision Because The Change In Requirements Will Amount To More Than $100 Over The Life Of The Loan ........... 35

   G.   THE COMPLAINT STATES A CLAIM UNDER THE NJTCCA................................... 35

   H.   THE VOLUNTARY PAYMENT RULE DOES NOT BAR PLAINTIFF'S CLAIMS .... 38

IV.    CONCLUSION ................................................................................ 39

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

Cases

*Arcand v. Brother Int'l Corp.*,
673 F. Supp. 2d 282 (D.N.J. 2009) .......................................................27

*Arthur v. Maersk, Inc.*,
434 F.3d 196 (3d Cir. 2006)...............................................................39

*Ashcroft v. Iqbal*,
556 U.S. 662, 129 S. Ct. 1931 (2009) .....................................................8

*Barows v. Chase Manhattan Mortgage Corp.*,
465 F. Supp. 2d 347 (D.N.J. 2006) .......................................................36

*Beach v. Ocwen Fed. Bank*,
523 U.S. 410 (1998)........................................................................30

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007).........................................................................8

*Bermudez v. First of Am. Bank Champion, N.A.*,
860 F. Supp. 580 (N.D. Ill. 1994), *withdrawn pursuant to settlement*, 886 F. Supp.
643 (N.D. Ill. Mar 22, 1995) ...............................................................33

*Bosland v. Warnock Dodge, Inc.*,
964 A.2d 741 (N.J. 2009)...................................................................21

*Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Ctr. Assocs.*,
864 A.2d 387 (N.J. 2005)...................................................................15

*CoreStates Bank, N.A. v. Cutillo*,
723 A.2d 1053 (Pa. Super. Ct. 1999) .....................................................16

*Demando v. Morris*,
206 F.3d 1300 (9th Cir. 2000) .............................................................31

*Emerson Radio Corp. v. Orion Sales Inc.*,
80 F. Supp. 2d 307 (D.N.J. 2000), *rev'd in part on other grounds*, 253 F.3d 159 (3d
Cir. 2001) .............................................................................15, 17

*Farash & Robbins, Inc. v. Fleet Nat'l Bank*,
No. 03-cv-361, 2005 WL 3465659 (D.N.J. Dec. 16, 2005)....................................27

*Fields v. Thompson Printing Co.*,
363 F.3d 259 (3d Cir. 2004)................................................................15

*Frederico v. Home Depot*,
    507 F.3d 188 (3d Cir. 2007)..................................................................9

*Glenfed Fin. Corp., Commercial Fin. Div. v. Penick Corp.*,
    647 A.2d 852 (N.J. Super. Ct. App. Div. 1994)..................................19

*Gonzalez v. Wilshire Credit Corp.*,
    25 A.3d 1103 (N.J. 2011)..........................................................22, 23, 24

*Graboff v. The Collern Firm*,
    No. 10-1710, 2010 WL 4456923 (E.D. Pa. Nov. 8, 2010) ....................9

*Hassler v. Sovereign Bank*,
    374 Fed. Appx. 341 (3d Cir. 2010)....................................................24

*Hirsch v. Phily*,
    73 A.2d 173 (N.J. 1950)......................................................................19

*Hoffenberg v. Bumb*,
    No. 11-1268, 2011 U.S. App. LEXIS 11741 (3d Cir. May 19, 2011) ......8

*Hofstetter v. Chase Home Finance, LLC*,
    751 F. Supp. 2d 1116 (N.D. Cal. 2010) ........................................ *passim*

*Howard v. Diolosa*,
    574 A.2d 995 (N.J. Super. 1990) .........................................................28

*Hubbard v. Fidelity Fed. Bank*,
    91 F.3d 75 (9th Cir. 1996) ......................................................30, 31, 36

*In re Mushroom Transp. Co.*,
    382 F.3d 325 (3d Cir. 2004)................................................................20

*In re Smith*,
    866 F.2d 576 (3d Cir. 1988)...............................................................17

*Indian Brand Farms, Inc. v. Novartis Crop Prot., Inc.*,
    617 F.3d 207 (3d Cir. 2010)................................................................22

*Luther v. Kia Motors America, Inc.*,
    No. 08-cv-386, 2008 WL 2397331 (W.D. Pa. Jun. 12, 2008) .................13

*Marsellis-Warner Corp. v. Rabens*,
    51 F. Supp. 2d 508 (D.N.J. 1999) ................................................18, 19

*McGlynn v. Schultz*,
    90 N.J. Super. 505 (Ch. Div. 1966), *aff'd* 95 N.J. Super. 412 (App. Div. 1967), *cert. denied*, 50 N.J. 409 (1967)...............................................................19

*McTernan v. City of York*,
577 F.3d 521 (3d Cir. 2009)....................................................................8, 9, 13

*Mele v. FRB*,
359 F.3d 251 (3d Cir. 2004)................................................................................9

*Mullin v. Auto. Prot. Corp.*,
No. 07-3327, 2008 WL 4509612 (D.N.J. Sept. 29, 2008)......................................36

*N.J. Citizen Action v. Schering-Plough Corp.*,
842 A.2d 174 (N.J. Super. Ct. App. Div. 2003)...................................................22

*N.J. State Bar Ass'n v. Berman*,
611 A.2d 1119 (N.J. Super. Ct. App. Div. 1992)..................................................38

*New Jersey State Ordinary v. Thatcher*,
41 N.J.L. 403 (N.J. Sup. Ct. 1879).....................................................................20

*Oshiver v. Levin, Fishbein, Sedran & Berman*,
38 F.3d 1380 (3d Cir. 1994)..............................................................................34

*Owen J. Roberts Sch. Dist. v. HTE, Inc.*,
No. 02-cv-7830, 2003 U.S. Dist. LEXIS 2997 (E.D. Pa. Feb. 28, 2003) ................26

*Pailes v. HSBC Mortgage Servs.*,
No. 10-cv-11509, 2011 WL 2791043 (D. Mass. Jul. 17, 2011) .........................2, 11

*People Express Airlines v. Consol. Rail Corp.*,
495 A.2d 107 (N.J. 1985)..................................................................................25

*Reszler v. Travelers Prop. Cas. Ins.*,
No. 06-586, 2007 WL 1035024 (D.N.J. Apr. 3, 2007).........................................39

*Rickenbach v. Wells Fargo Bank, N.A.*,
635 F. Supp. 2d 389 (D.N.J. 2009) ....................................................................38

*Roach v. Option One Mortgage Corp.*,
598 F. Supp. 2d 741 (E.D. Va. 2009) .................................................................34

*Roberts v. Fleet Bank, N.A.*,
342 F.3d 260 (3d Cir. 2003)..............................................................................30

*Rossman v. Fleet Bank, N.A.*,
280 F.3d 384 (3d Cir. 2002)..............................................................................30

*Saltiel v. GSI Consultants, Inc.*,
788 A.2d 268 (N.J. 2002)..................................................................................25

*Sitogum Holdings, Inc. v. Ropes*,
    800 A.2d 915 (N.J. Super. 2002) ..........................................................28

*Smith v. TA Operating, LLC*,
    No. 10-2563, 2011 WL 3667507 (D.N.J. Aug. 19, 2011) ......................28

*Temple Univ. Hosp., Inc. v. Group Health, Inc.*,
    No. 05-cv-102, 2006 WL 146426 (E.D. Pa. Jan. 12, 2006)....................17

*Titan Stone, Tile & Masonry, Inc. v. Hunt Constr. Group, Inc.*,
    No. 05-cv-3362, 2007 WL 174710 (D.N.J. Jan. 22, 2007)....................27

*Traversa v. Home Depot U.S.A., Inc.*,
    No. 07-cv-1324, 2007 WL 312468 (D.N.J. Oct. 23, 2007) ...................27

*Turf Lawnmower Repair, Inc. v. Bergen Record Corp.*,
    139 N.J. 392, 655 A.2d 417 (N.J. 1995) ...............................................23

*Vician v. Wells Fargo Home Mortgage*,
    No. 2:05-cv-144, 2006 WL 694740 (N.D. Ind. Mar. 16, 2006) ..................2, 10, 32

*Williams v. Wells Fargo Bank, N.A.*,
    No. 11-21233, 2011 WL 4901346 (S.D. Fla. Oct. 14, 2011) ......................2, 11, 37

*Wulf v. Bank of America, N.A.*,
    No. 10-5176, 2011 WL 2550628 (E.D. Pa. Jun. 27, 2011)........................... *passim*

## STATUTES

12 U.S.C. § 2605(g) ..........................................................................................26, 37

12 U.S.C. § 2609 .....................................................................................................26

Truth in Lending Act, 15 U.S.C. §§ 1601, *et seq.* ............................................. *passim*

Dodd–Frank Act, Pub. L. No. 111–203, 124 Stat. 1376 (2010) ...................................37

New Jersey Consumer Fraud Act, N.J. Stat. Ann. §§ 56:8-1, *et seq.* .................... *passim*

New Jersey's Truth-In-Consumer Contract, Warranty and Notice Act, N.J. Stat. Ann. §
    56:12-15 ................................................................................................4, 35, 36, 37

Real Estate Settlement Procedures Act, 12 U.S.C. § 2601, *et seq.*.........................26, 37

## OTHER AUTHORITIES

12 C.F.R. pt. 226, Supp. I, § 17(e), cmt. 1 ...............................................................32

12 C.F.R. § 226.17 ........................................................................................30, 31, 36

12 C.F.R. § 226.18 ................................................................................................................30, 32

Black's Law Dictionary ........................................................................................................20, 37

Mandatory Purchase of Flood Insurance Guidelines, FEMA 2007 ...............................................12

National Flood Insurance Program Handbook .........................................................................5, 20

Fed. R. Civ. P. 12 ............................................................................................................2, 3, 8, 14

Plaintiff Elizabeth Cronk ("Ms. Cronk" or "Plaintiff"), individually and on behalf of all others similarly situated, through her undersigned counsel, respectfully submits this memorandum of law in opposition to the motion to dismiss of GMAC Mortgage, LLC ("GMAC" or "Defendant").

## I. __INTRODUCTION__

As a condition for closing on her mortgage loan (the "Loan") for the purchase of a condominium unit in Secaucus, New Jersey (the "Condo"), Ms. Cronk demonstrated that she had flood insurance that satisfied the lender and the National Flood Insurance Act ("NFIA"). She did so by showing that her condominium association maintained flood insurance for the entire complex through a Residential Condominium Building Association Policy ("RCBAP") that provided coverage for the full replacement value of the complex. Satisfied, the lender closed on the Loan and assigned it to GMAC, the company that dictated the underwriting requirements.

Over four years later, GMAC breached its contract with Ms. Cronk by demanding that she purchase flood insurance in addition to the RCBAP that was not called for under the mortgage agreement (the "Mortgage") or the NFIA. In response, Ms. Cronk demonstrated that the RCBAP covered the full replacement value of her Condo, *i.e.*, the maximum amount that could be paid under a policy backed by the National Flood Insurance Program ("NFIP") in the event of loss. GMAC simply disregarded Ms. Cronk and took money out of her escrow account without her permission for the purchase of a "force-placed" flood insurance policy through one of its affiliates at a marked-up premium.

GMAC attempts to portray these events as a one-off dispute with Plaintiff, but GMAC is wrong. Unfortunately, the practice of force-placing unnecessary, excessive or redundant flood insurance on captive consumers to generate fees and interest (and a profit) is an all-too-common

1

scheme in the lending industry, and GMAC is an active participant.[1]  Numerous federal courts,

moreover, have ruled on Rule 12 motions to dismiss and rejected arguments similar to those

asserted by GMAC here, <u>including this Court</u>.[2]

This case is about GMAC's systematic abuse of customers concerning its force-placed

insurance practices.  For example, in addition to Ms. Cronk's allegations, Plaintiff Dennis Throm

recently filed a related action in which he alleges that GMAC force-placed flood insurance of

$176,000 and unilaterally withdrew in excess of $6,000 from his escrow account, even though he

did not live in a flood zone and his mortgage balance was $55,000.  *See Throm v. GMAC*

---

[1] Recently filed force-placed insurance cases alleging abuses by lenders include, without limitation: *LaCroix v. US Bank, N.A.*, 0:11-cv-62424 (D. Minn.) (alleging abuses in force-placing flood insurance); *Cook v. RBS Citizens, NA*, 1:11-cv-268 (D.R.I.) (same); *Sayago v. Wells Fargo Bank*, 8:11-cv-2009 (M.D. Fla.) (same); *McKenzie v. Wells Fargo Bank*, 4:11-cv-4965 (N.D. Cal.) (same); *Morris v. Wells Fargo Bank*, 2:11-cv-474 (W.D. Pa.) (same); *Arnett v. Bank of America, NA*, 3:11-cv-1372 (D. Or.) (same); *Farmer v. Bank of America, N.A.*, 5:11-cv-935, (W.D. Tex.) (same); *Wulf v. Bank of America, N.A.*, 2:10-cv-5176 (E.D. Pa.) (same); *Cook v. Bank of America*, 2:11-cv-371 (M.D. Fla.) (same); *Blass v. Flagstar Bancorp., Inc.*, 9:11-cv-80543 (S.D. Fla.) (same); *Hofstetter v. Chase Home Fin. LLC*, 3:10-cv-1313 (same); *Warren v. Chase Home Fin., LLC*, 1:10-cv-4718 (S.D.N.Y.) (same); *Beckler v. Chase Home Fin., LLC*, 4:10-cv-342 (E.D. Mo.) (same); *Gooden v. Suntrust Mortgage, Inc.*, 2:11-cv-2595 (E.D. Cal.) (alleging abuses in force-placing hazard and flood policies); *Dr. Bradley-Brown v. Am. Home Mortgage Servicing, Inc.*, 8:11-cv-1132 (C.D. Cal.) (same); *Williams v. Wells Fargo Fin., Inc.*, 1:11-cv-21233 (S.D. Fla.) (alleging abuses in force-placing hazard policies); *Brown v. Wells Fargo Bank*, 5:11-cv-631 (E.D.N.C.) (same); *VanHauen v. Am. Home Mortgage Servicing Inc.*, 3:10-cv-2146 (N.D. Tex.) (same); *Lugo v. Bank of America, N.A.*, 7:11-cv-7955 (S.D.N.Y.) (same); *Gustafson v. BAC Home Loan Servs., LP*, 8:11-cv-915 (C.D. Cal.) (same).

[2] *See, e.g.*, *Wulf v. Bank of America, N.A.*, No. 10-5176, 2011 WL 2550628 (E.D. Pa. Jun. 27, 2011) (denying motion to dismiss in force-placed flood insurance case); *Williams v. Wells Fargo Bank, N.A.*, No. 11-21233, 2011 WL 4901346 (S.D. Fla. Oct. 14, 2011) (denying motion to dismiss breach of contract and unjust enrichment claims in force-placed insurance case); *Pailes v. HSBC Mortgage Servs.*, No. 10-cv-11509, 2011 WL 2791043 (D. Mass. Jul. 17, 2011) (denying motion to dismiss breach of contract in force-placed insurance case); *Vician v. Wells Fargo Home Mortgage*, No. 2:05-cv-144, 2006 WL 694740 (N.D. Ind. Mar. 16, 2006) (denying motion to dismiss claims similar to those asserted in this case).  In *Hofstetter v. Chase Home Finance LLC*, the district court recently gave final approval to a class action settlement reached by the parties after a motion to dismiss was denied and the case was certified as a class action. *See Hofstetter v. Chase Home Fin. LLC*, 10-cv-1313 (N.D. Cal. Nov. 14, 2011) (final approval order) (settlement-related documents can be found at http://www.chasefloodinsurancelitigation.com/).

*Mortgage, LLC*, No. 11-cv-6813 (E.D. Pa.); *see also Ulbrich v. GMAC Mortgage, LLC*, 0:11-cv-1372 (S.D. Fla.) (alleging abuses in force-placing hazard, wind, and flood policies).

In its Rule 12(b)(6) motion, GMAC ignores the well-pleaded facts in the Complaint and argues that Plaintiff does not state a valid breach of contract claim.  In particular, GMAC asserts that the Mortgage gave it the unbridled right and ability to set and change insurance requirements and force-place policies whenever it demands additional insurance.  GMAC, however, misconstrues the Mortgage and case law.  First, when GMAC (at the closing and for years thereafter) accepted Plaintiff's RCBAP and its full replacement coverage of Plaintiff's Condo, GMAC explicitly waived its right to require Ms. Cronk to obtain additional flood insurance.  Second, even if GMAC had changed its insurance requirements under the Mortgage prior to force-placing the additional policy, GMAC improperly abused any discretion it had.  By law, GMAC may not abuse its discretion in bad faith, as it did here, to require flood insurance that **<u>exceeds</u>** the full replacement value of the Condo, *i.e.*, the maximum amount that can be paid from the NFIP in the event of loss.  Third, GMAC is wrong in claiming that the RCBAP did not cover the full replacement value for the Condo.  As explained below, even the documents extrinsic to Plaintiff's Complaint that GMAC improperly submits show that the RCBAP covered full replacement value.  In addition, this argument raises issues that cannot be decided without discovery.

GMAC's other arguments are similarly without merit.  As set forth below:

- GMAC's wrongful taking of Plaintiff's money can form the basis for a conversion claim;

- The economic loss rule does not bar Plaintiff's conversion claim or New Jersey Consumer Fraud Act, N.J. Stat. Ann. §§ 56:8-1, *et seq.* ("CFA") claim because those

claims are based on duties that arise independently of the contractual relationship between the parties;

- Unconscionability is a recognized cause of action and Plaintiff has satisfied all elements;

- GMAC violated the Truth in Lending Act, 15 U.S.C. §§ 1601, *et seq.* ("TILA"), by changing the terms of the Mortgage to require additional flood insurance and failing to disclose the flood insurance requirements in compliance with TILA;[3]

- GMAC violated the CFA and New Jersey's Truth in Consumer-Contracts, Warranty, and Notice Act ("TCCWNA"), N.J. Stat. Ann. §§ 56:12-14, *et seq.*, by misstating that it was acting within its rights under the Mortgage and federal law; and

- The "Voluntary Payment Rule" does not bar Plaintiff's claims because her payments were coerced.

Accordingly, GMAC's motion to dismiss should be denied in its entirety.

## II.   <u>STATEMENT OF ALLEGED FACTS</u>

On July 10, 2006, Plaintiff obtained her Loan from First Acceptance Mortgage ("First Acceptance") to finance the purchase of her Condo.  Compl., ¶ 1. The Mortgage was immediately assigned to GMAC, the company that dictated the underwriting requirements for the Loan to the originator.  Compl., ¶¶ 1, 32-33.

Plaintiff's Condo is located in the Teal/Dunlin building of the Harmon Cove II condominium complex, which is located in a Federal Emergency Management Agency ("FEMA") designated Special Flood Hazard Area ("SFHA").  *See* Compl., ¶¶ 24, 37.  Harmon Cove II is made up of two phases (*i.e.*, two separate groups of buildings that do not share a

---

[3] Judge McLaughlin and Magistrate Judge Hey recently reached a similar conclusion in *Wulf v. Bank of America, N.A.*, No. 10-5176, 2011 WL 2550628 (E.D. Pa. Jun. 27, 2011).

common wall) – the 170 unit Teal/Dunlin phase and the 86 unit Sanderling Court phase.

Teal/Dunlin condo units, on average, are smaller than Sanderling Court condo units.

Under the NFIA, properties located within an SFHA must carry a minimum amount of flood insurance. Compl., ¶¶ 23-25. Most condominiums (including Ms. Cronk's) are insured for flood through collective Residential Condominium Building Association Policies ("RCBAPs"), which insure shared building elements as well as building elements within individual condominium units. Compl., ¶¶ 5, 25. The NFIA requirements are satisfied if the insurance covers **the lesser of**: (1) the $250,000 NFIA limit; (2) the outstanding balance of the loan; or (3) the "insurable value" of the building. Compl., ¶ 24. The "insurable" value of an individual condo unit is the replacement cost of the condominium divided by the number of units. Compl., ¶ 25. Insurance policies obtained through the NFIP do not provide coverage for losses in excess of the insurable value of the building. Compl., ¶ 6, 22, 25; *see also* NFIP Handbook at 29. This is set forth in the "Notice of Special Flood Hazards," a document in Plaintiff's closing package that addresses flood insurance. *See* Ex. 1 ("Flood insurance coverage under the NFIP is limited to the overall value of the property securing the loan minus the value of the land in which the property is located.").[4]

GMAC required Plaintiff to demonstrate adequate flood insurance coverage as a condition of closing. Compl., ¶¶ 1, 10, 35, 38. Plaintiff showed that Harmon Cove II was insured through an RCBAP. Compl., ¶¶ 35, 37-38. On July 10, 2006, the lender accepted the RCBAP as adequate and the parties closed on the Loan. Compl., ¶ 35,38. Under the terms of the July 10, 2006 "Condominium Rider" that was "incorporated into" and "deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed … of the same date" ("Condominium

---

[4] GMAC did not to include this document as an exhibit to its motion, though it is attached to Plaintiff's closing documents along with her Mortgage and Condominium Rider.

Rider"), the parties agreed that Ms. Cronk's obligation to maintain flood insurance under federal

law and the Mortgage was satisfied based on the RCBAP.  Compl., ¶ 36.  Therefore, the lender

waived provisions in the Mortgage that would otherwise allow it to collect insurance premiums

from Ms. Cronk.  The Condominium Rider provides, in pertinent part:

> B.  Property insurance.  **So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "Blanket" policy on the Condominium Project which is satisfactory to lender** and which provides insurance coverage in the amounts (including deductable levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including but not limited to, earthquakes and floods, from which lender requires insurance, **then: (i) Lender <u>waives</u> the provision in Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and** (ii) <u>**Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.**</u>  What Lender requires as a condition of this waiver can change during the term of the loan.

Compl., ¶ 36; *see also* Def.'s Ex. B (emphasis added).

On January 5, 2011, more than four years after the closing, and notwithstanding that there

had been no change in the parties' circumstances, GMAC sent Ms. Cronk a notice requiring

additional flood insurance.  Compl., ¶ 39; Def.'s Ex. C.  In response, on January 12, 2011, Ms.

Cronk caused the condominium association's insurance broker to provide a copy of the current

RCBAP to GMAC (which GMAC also did not file with its motion to dismiss).  Compl., ¶ 41; *see*

*also* Ex. 2 (copy of January 12, 2011 facsimile from insurance broker to GMAC confirming that

**<u>both the Teal/Dunlin Plaza Building and the Sanderling Court Building had flood</u>**

**<u>insurance coverage equal to 100% of full replacement value</u>**).[5]  The declaration pages of the

---

[5] GMAC attached only the third page of this fax as Exhibit F to Defendant's Brief.  The absence of the first two pages, attached as Exhibit 2 to this brief, demonstrates the unfairness inherent in considering documents extrinsic to the Complaint.  As Exhibit 2 makes abundantly clear, the flood coverage for the entire complex was equal to both the hazard coverage and the full replacement value.

RCBAP demonstrated that the condominium was covered by $53,032,500 in flood insurance from Selective Insurance Company of America, Ltd. – **an amount that equaled 100% of the replacement value of the complex**. Ex. 2; Compl., ¶¶ 9, 41, 63, 86.

Notwithstanding its receipt of this document, GMAC then sent Ms. Cronk another letter on January 16, 2011 stating, in pertinent part:

> …due to the fact that your property, on which we hold a mortgage, is located in a SFHA, the terms of your mortgage and/or federal law require you to purchase adequate flood insurance.  Our loan file does not contain evidence of enough flood insurance in force on your property.

Compl., ¶ 42.  Notwithstanding that this information had just been provided, the letter stated:

> …if you reside in a condominium or townhouse and believe you are adequately insured under a master policy issued to your homeowners association, please provide us with a copy of your current policy.

Def.'s Ex. C at 1.  The letter did not state any change in GMAC's insurance requirements.

The additional flood insurance GMAC demanded was excessive, unnecessary and redundant because insurance purchased through the NFIP will not cover any amounts in excess of the maximum insurable value of the condominium  (*i.e.*, the full replacement cost).  Compl., ¶ 6, 22, 27.  Thus, requiring Ms. Cronk to purchase flood insurance coverage in an amount that exceeds the RCBAP's coverage creates an "excess insurance" situation, which FEMA denounces.  Compl., ¶ 25, 27.

On March 6, 2011, GMAC informed Plaintiff that it had force-placed a flood insurance policy on Plaintiff's Condo through its affiliate, Southwest Business Corporation ("SWBC").  Compl., ¶ 68.  SWBC's force-placed programs are specifically designed to provide lenders including GMAC with "growth" and "profitability."  SWBC – a company with which GMAC has a mutually beneficial financial relationship – charges insurance premiums that can be nearly four times the cost of obtaining the same insurance from an independent insurance company.

Compl., ¶¶ 67-68.

GMAC withdrew these forced insurance premium payments directly from Plaintiff's

mortgage escrow account without her permission.  Compl., ¶¶ 11, 48.  Ms. Cronk had no choice

but to pay the excessive premium after GMAC added it to her mortgage balance to avoid

possible interest and foreclosure and having her account reported delinquent to the consumer

credit reporting agencies.  Compl., ¶ 48.  GMAC has not and cannot identify any change in

condition between when the Loan closed and when it force-placed additional flood insurance

four years later.  Compl., ¶ 50.

## III.   **ARGUMENT**

GMAC's motion is without merit because Plaintiff's Complaint satisfies the applicable

pleading standard on all counts.  To survive a Rule 12(b)(6) motion, a complaint need state "only

enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*,

550 U.S. 544, 570 (2007).  In determining whether a complaint states allegations with sufficient

plausibility, "a court must accept as true all of the allegations contained in a complaint."

*Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1931, 1949 (2009).  The allegations must also be

"interpreted in the light most favorable to the plaintiffs, and all inferences must be drawn in

favor of them."  *McTernan v. City of York*, 577 F.3d 521, 526 (3d Cir. 2009) (quoting *Schrob v.

Catterson*, 948 F.2d 1402, 1408 (3d Cir. 1991)).  "A claim has facial plausibility when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged."  *Hoffenberg v. Bumb*, No. 11-1268, 2011 U.S.

App. LEXIS 11741 (3d Cir. May 19, 2011) (quoting *Iqbal*, 129 S. Ct. at 1949).

This standard does not impose a "probability requirement," but "simply calls for enough

fact to raise a reasonable expectation that discovery will reveal evidence" of the cause of action.

*Id.* at 556.  In this appraisal, courts may not consider materials extraneous to the pleadings unless those materials are "*integral to* or *explicitly* relied upon in the complaint."  *Mele v. FRB*, 359 F.3d 251, 256 (3d Cir. 2004) (emphasis in original).

## A.   THE COMPLAINT STATES A CLAIM FOR BREACH OF CONTRACT

### 1.  The Complaint Alleges All Elements Of A Breach Of Contract Claim

Plaintiff has stated a breach of contract claim based on the plain language of the Mortgage, the Condominium Rider, and the course of dealing between the parties.  To prove a breach of contract claim, a plaintiff must establish:  (1) the existence of a contract; (2) a breach of a duty imposed by the contract; (3) resultant damages; and (4) that the plaintiff has satisfied her obligations under the contract.  *Frederico v. Home Depot*, 507 F.3d 188, 203 (3d Cir. 2007).[6]  Plaintiff's breach of contract claim is established by the following facts.

First, Plaintiff and GMAC agreed to the Mortgage and Condominium Rider, so a contract exists.  Compl., ¶¶ 32-36, 38, 84; *see also* Def.'s Exs. A & B (copies of Mortgage and Condominium Rider); Ex. 1 (copy of the Notice of Special Flood Hazard).  The Condominium Rider sets forth GMAC's waiver of its right to require Plaintiff to pay for additional flood insurance as long as the Condo was adequately covered by the RCBAP in an amount equal to 100% of full replacement value.  Compl., ¶¶ 35-36, 85-86.  GMAC was aware of the existence of such coverage.  Compl., ¶ 10, 38, 41.  Second, GMAC breached the terms of its contract by force-placing additional flood insurance on Ms. Cronk notwithstanding the RCBAP.  Compl., ¶

---

[6] In a footnote, Defendant asserts that New Jersey law applies.  Resolution of any choice of law analysis is premature at this stage of the litigation.  *See Graboff v. The Collern Firm*, No. 10-1710, 2010 WL 4456923 (E.D. Pa. Nov. 8, 2010) ("when confronted with a choice of law issue at the motion to dismiss stage, courts within the Third Circuit have concluded that it is more appropriate to address the issue at a later stage in the proceedings") (citing *Hayes v. Am. Int'l Group*, No. 09-2874, 2009 WL 4591531, at *3 (E.D. Pa. Nov. 30, 2009)).  Without waiving this position, Plaintiff will analyze the claim under New Jersey law in addressing this motion.

46, 87.  Third, the force-placement has resulted in Ms. Cronk suffering damages.  Compl., ¶¶ 47-

48, 63-64, 69, 89.  Finally, Ms. Cronk has always paid her mortgage payments, including the

additional payment for the force-placed flood insurance.  *See* Compl., ¶¶ 9, 11, 89.  Thus,

Plaintiff's Complaint alleges all elements of her contract claim.

      *Vician v. Wells Fargo Home Mortgage*, No. 2:05-cv-144, 2006 WL 694740, at *6-7

(N.D. Ind. Mar. 16, 2006), is instructive here.  In *Vician*, the court held that the plaintiff satisfied

all of the elements for a breach of contract claim based on the defendant's force-placement of

insurance where the language in the Condominium Rider provided, as it does here,[7] that the

lender had no right to require the plaintiff to pay for individual flood insurance so long as the

condominium complex was covered under an owner association policy.  The court wrote:

> Plaintiffs allege that they executed a mortgage and Condominium Rider which established that the mortgage holder had no right to place fire and hazard insurance on their condominium if the condominium was covered by the Owners Association policy.  Plaintiffs further allege that the Owners Association maintained complete fire and hazard insurance coverage on the building, that Wells Fargo was aware of such coverage, and that Plaintiffs were at all times in complete compliance with all terms and conditions of the mortgage and Condominium Rider.  Plaintiffs assert that Wells Fargo breached the terms of the mortgage and Condominium Rider when it force-placed insurance coverage on their condominium unit.  Finally, Plaintiffs contend that they were damaged by being charged for the force-placed insurance coverage.

*Id.* at *6-7.  Based on these allegations, the court sustained a breach of contract claim.

      GMAC asks the Court to disregard *Vician* by arguing that Section 5 of the Mortgage

"made clear that the lender could change the flood insurance amounts during the term of the

Loan."  Def. Br. at 3.  In the Condominium Rider, however, GMAC <u>waived</u> Section 5 of the

Mortgage so long as the RCBAP covered the full replacement value of the Condo.  Compl., ¶ 36.

As alleged in the Complaint, GMAC did not and has never articulated any change to its

---

[7] GMAC admits that the Condominium Rider is a "a uniform document by Fannie Mae/Freddie Mac for single family condominiums."  Def. Br. at 4.

requirements to render inapplicable, the waiver in the Condominium Rider.  Compl., ¶ 50.  Thus, GMAC violated the Mortgage and Condominium Rider by force-placing unnecessary, excessive and redundant flood insurance without Ms. Cronk's permission in addition to the RCBAP.  *See Williams v. Wells Fargo Bank, N.A.*, No. 11-21233, 2011 WL 4901346 (S.D. Fla. Oct. 14, 2011) (denying motion to dismiss breach of contract claims in force-placed insurance case); *Pailes v. HSBC Mortgage Servs.*, No. 10-cv-11509, 2011 WL 2791043 (D. Mass. Jul. 17, 2011) (same).

**2.  Plaintiff Had Full Replacement Coverage Under The RCBAP And Any Argument To The Contrary Raises Issues For Discovery**

Plaintiff alleges that she had full replacement coverage under the RCBAP for flood insurance.  Compl., ¶¶ 9, 41, 63, 86; *see also* Ex. 2.  GMAC's contention that the RCBAP was insufficient – an issue on which the parties are entitled to discovery – is wrong.

Compliance with the minimum requirements under the National Flood Insurance Act ("NFIA") was a condition for closing.  Compl., ¶ 35.  Plaintiff satisfied the condition by showing that the RCBAP provided coverage for the full replacement value of the Condo.  Compl., ¶¶ 35, 38, 41.  The lender accepted the RCBAP as adequate at closing.  Compl., ¶¶ 9-10, 35, 38.  The RCBAP continued to provide compliant coverage.  Compl., ¶ 9.  In January 2011, however, with no changes in Plaintiff's circumstances, Defendant demanded additional coverage.  Compl., ¶ 39.

What apparently changed – so that GMAC can derive additional fees and interest – is how Defendant calculates replacement value on a per-unit basis in multi-building condominium complexes.  GMAC is ostensibly arguing that the hazard coverage – sometimes used as a proxy for replacement value – divided by the total number of units in a multi-building complex without regard to differences between the buildings, must equal the flood coverage for just one building in the complex divided by the number of units in that one building.  This calculation is wrong.

Unsurprisingly here, GMAC has attempted to use this disparity in building replacement values to its advantage to generate the fees and commissions at the heart of this suit.

GMAC is, in effect, also attempting to exploit a caveat in flood insurance rules as a basis for this practice. Condominium associations can obtain a "blanket" hazard insurance policy for multiple-building condominium complexes, but cannot obtain a similar blanket policy for flood insurance. As FEMA states: "**<u>Blanket Insurance</u>** – A single amount of insurance applying to more than one building and/or contents. **<u>Blanket insurance is not permitted under the NFIP</u>**." (Mandatory Purchase of Flood Insurance Guidelines, at GLS 1, FEMA 2007) (emphasis added). If the "replacement value" listed on the hazard insurance is to be used as a yardstick for measuring "replacement value" for flood insurance, the logical and proper way to evaluate "replacement value" for flood insurance is to aggregate the flood insurance coverage for each building in the complex and compare it to the hazard insurance for the entire complex. GMAC appears to have used this method from the time of Plaintiff's closing through January 2011.

Plaintiff's RCBAP continues to be compliant in providing 100% replacement value. In addition, the aggregate coverage of the RCBAP for all buildings in Plaintiff's complex is equivalent to the blanket hazard policy that covers the entire multi-phase, multi-building complex. *Compare* Ex. 2 & Def.'s Ex. F (showing RCBAP coverage of $18,321,300 for 86 units in Sanderling Court and $34,711,200 for 170 units in Teal/Dunlin Plaza – aggregate of $53,032,500), *with* Ex. Def.'s Ex. D (showing blanket hazard coverage of $53,032,000 for 256 units in both phases).

Notwithstanding that the aggregate RCBAP coverage at Plaintiff's complex equals the amount of the blanket hazard insurance, GMAC wrongly asserts that she is underinsured. Instead of accounting for the difference in the replacement values between the two separate and

independent buildings built at different times comprising Plaintiff's complex, GMAC now

asserts that the per unit "replacement value" is determined by dividing the total number of units

(256) into the overall blanket hazard insurance coverage of $53,032,000 (yielding per-unit

coverage of $207,158).  *See* Def. Br. at 6.  However, instead of comparing apples to apples (the

total amount of flood coverage for the entire complex to the total amount of hazard coverage for

the entire complex), GMAC calculated insurance coverage levels differently for flood insurance

purposes than for hazard insurance purposes.  Using this arbitrary method, GMAC then asserts

that Plaintiff's RCBAP is deficient because the coverage for just Plaintiff's phase ($34,711,200)

divided by the number of units (170) provides a replacement value of only $204,183.  *See id.*

Defendant uses this difference to claim that Ms. Cronk maintained inadequate flood insurance.

GMAC's argument must fail for several reasons.  First, GMAC is raising numerous

issues outside of the Complaint to dispute Plaintiff's allegation that she was insured by an

adequate RCBAP that covered 100% of the replacement value of her Condo.  It is black letter

law that Plaintiff is entitled to all reasonable inferences and the issue is limited to whether

Plaintiff has adequately pleaded her Complaint.  *See McTernan*, 577 F.3d at 526 (quoting

*Schrob*, 948 F.2d at 1408).

Second, GMAC relies on selected documents that are neither referred to in the Complaint

nor central to Plaintiff's claim.  Accordingly, these exhibits should not be considered in ruling on

the motion to dismiss.  *See Luther v. Kia Motors America, Inc.*, No. 08-cv-386, 2008 WL

2397331, at *6 (W.D. Pa. Jun. 12, 2008) (extrinsic document must "not only refer to the

document in question, but it must also be central to the claims therein" before it can be

considered on a motion to dismiss) (citing *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548,

560 (3d Cir. 2002)).  By GMAC's own characterization, Plaintiff "relies solely" and "bases her

13

entire case upon" language in the Mortgage and Condominium Rider.  *See* Def. Br. at 9-10.

Under the Third Circuit's standard, extrinsic material should be limited to these documents.[8]

Yet, in its Rule 12 motion, GMAC goes well beyond the contract and seeks to have the Court

rely on an incomplete and misleading record of documents and correspondence.

Third, GMAC's challenge to the adequacy of the RCBAP is without merit, even when

considering the documents that GMAC submitted, for the reasons stated above and based on

further evidence that will be developed in discovery.  Importantly, GMAC does not question the

sufficiency of $53,032,500 as providing adequate hazard insurance for the complex.[9]  The

obvious explanation between the differing amounts of the two flood policies are the specific

make-up of the two buildings – Sanderling court units are bigger on average than units in

Teal/Dunlin.  Even one of GMAC's selected documents supports this conclusion.  *See* Def.'s Ex.

D (noting total of 256 Units in complex, and the fact that "Association's insurance policy

provides insurance on the buildings, on a blanket basis," and referring to two "**RCBAP Flood**

**Policies with Selective Insurance" as "Replacement Cost Coverage.**").

Finally, GMAC's cited cases provide no support for dismissing Plaintiff's breach of

contract claim.  Those cases involve situations where lenders argued that they were entitled to

---

[8] Accordingly, Plaintiff does not object to GMAC's submission of the Mortgage and Condominium Rider as Exhibits A and B, respectively, to its memorandum of law.

[9] Indeed, the Owners Association is in the best position to determine replacement value, and has a fiduciary duty to provide necessary coverage, as indicated on p. 45 of the NFIP manual.  As stated in the FEMA guidelines: "[a]lthough the statutory requirements apply with equal force to condominium unit owners and their lenders, the practice of the lending industry…is to defer to the association to ensure compliance" because "[c]ondominium association board members have a fiduciary responsibility to unit owners to protect the common property by assuring that appropriate insurance coverage is in place.  This responsibility often includes providing adequate flood insurance to protect buildings located in Special Flood Hazard Areas (SFHAs)."  GMAC has provided no information demonstrating that the Owners Association did not properly discharge its duty.  Indeed, industry practice as well as the language of the Condominium Rider itself, is to rely on the Owners Association's determination.

force-place replacement cost coverage up to the maximum available under the NFIP.  Here, by

contrast, Plaintiff already is fully covered through the RCBAP for the maximum amount that can

be paid under the policy.  As explained below, relying on discretionary language in the contract

to permit insurance coverage in amounts that exceed the maximum coverage is simply a bad

faith exercise of that discretion.

### 3. The Complaint States A Claim For Breach Of The Implied Covenant Of Good Faith And Fair Dealing

To the extent GMAC had discretion under the Mortgage, it breached the implied

covenant of good faith and fair dealing by requiring additional, excessive and redundant flood

insurance without regard for the fact that its insurable interest was protected by the RCBAP.[10]

Compl., ¶¶ 12, 46-48, 88-89.  This claim has two elements:  (1) a showing that one party acted to

injure, impede or destroy the right of the other party to receive the "fruits of the contract;" and

(2) took that action without good faith.  *See Fields v. Thompson Printing Co.*, 363 F.3d 259, 270

(3d Cir. 2004); *Emerson Radio Corp. v. Orion Sales Inc.*, 80 F. Supp. 2d 307 (D.N.J. 2000),

*rev'd in part on other grounds*, 253 F.3d 159 (3d Cir. 2001) (holding that the duty of good faith

excludes activity that is unfair, not decent or reasonable, or dishonest).

The Complaint alleges that GMAC unilaterally and without permission added costs to

Plaintiff's Mortgage that were never agreed to and that were duplicative and unnecessary.  *See*

Compl., ¶ 12 ("GMAC forced Plaintiff to spend money needlessly to maintain flood insurance

on a piece of property that is already covered by the RCBAP."); *id.* ¶ 46 ("Plaintiff's property

was force-placed with flood insurance through one of GMAC's affiliates…."); *id.* ¶ 47 ("Plaintiff

---

[10] The prevailing rule in New Jersey is that a claim alleging a breach of the covenant of good faith must be pled as a breach of contract claim.  *Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Ctr. Assocs.*, 864 A.2d 387, 395 (N.J. 2005) ("Every party to a contract . . . is bound by a duty of good faith and fair dealing in both the performance and enforcement of the contract.").

was charged for these unnecessary flood insurance premiums and paid an inflated rate for the unnecessary premiums."); *id.* ¶ 48 ("Ms. Cronk's mortgage payment increased as a result [of Defendant's force-placing unnecessary and excessive flood insurance].").  These allegations properly assert that GMAC impeded Plaintiff's ability to obtain the fruits of her contract by force-placing unnecessary flood insurance.

GMAC's argument that Ms. Cronk has not provided factual support that GMAC acted in bad faith is unfounded.  *See* Def. Br. at 13.  GMAC knew that Plaintiff had adequate flood coverage under the RCBAP but charged Plaintiff for duplicative coverage anyway.  *See* Compl., ¶¶ 10, 38-39 (alleging that GMAC knew of the RCBAP coverage and accepted it at the closing and for four years thereafter).  This is bad faith.  *See CoreStates Bank, N.A. v. Cutillo*, 723 A.2d 1053, 1059 (Pa. Super. Ct. 1999) (declining to dismiss breach of contract under theory of duty of good faith against bank where bank's actions were inconsistent with parties' prior course of dealing).  Indeed, even after Ms. Cronk provided proof of adequate coverage, GMAC deliberately ignored that information and force-placed duplicative insurance for financial gain.[11]

Moreover, GMAC took advantage of Ms. Cronk's inability to avoid paying these amounts without incurring interest and possible foreclosure, and without having her account reported as delinquent to the three consumer credit reporting agencies.  Compl., ¶¶ 11, 48, 89.  These actions by GMAC constitute a clear abuse of its alleged power to specify or alter the flood insurance requirements.

---

[11] Even now, GMAC has attempted to convince the Court that Plaintiff did not have full coverage by only providing the third page of a three-page fax that demonstrated in January 2011 that the overall flood coverage was equal to the blanket hazard coverage.  *See* Def.'s Ex. F; *see also* Ex. 2 (providing the first two pages of the fax).

### 4. The Mortgage And The NFIA Do Not Preclude Plaintiff's Claim For Breach Of The Implied Covenant Of Good Faith And Fair Dealing

For the reasons discussed above, GMAC's argument that Plaintiff cannot state a claim for breach of the implied duty of good faith because "it acted in accordance with its express rights when it purchased flood insurance for Plaintiff" is without merit. Def. Br. at 12. The duty of good faith and fair dealing prohibits the imposition of additional and unnecessary costs and expenses on a borrower. *See In re Smith*, 866 F.2d 576, 584-85 (3d Cir. 1988). As the Third Circuit has held:

> A borrower of money, especially the owner of a residential property mortgaged to a lending institution, may reasonably expect that he or she will receive fair and above-board treatment in their dealings and that no undue advantage will be taken by the lender.

*Id.* at 584. These prohibited unnecessary costs and expenses include the abuse of power to specify terms and an exercise of discretion literally provided to a party but used to thwart the other party's reasonable expectations under the contract. *See, e.g.*, *Temple Univ. Hosp., Inc. v. Group Health, Inc.*, No. 05-cv-102, 2006 WL 146426, at *5 (E.D. Pa. Jan. 12, 2006) (noting "abuse of a power to specify terms" violates the duty of good faith and fair dealing); *Emerson*, 80 F. Supp. 2d at 314 ("[G]ood faith requires the defendant not exercise such discretion as it may have under the literal terms of the contract to thwart Plaintiff's expectation…."). Requiring Plaintiff to pay for force-placed insurance that exceeds the maximum amount that can be paid out in the event of loss in order to reap additional fees and interest is an act of bad faith.

In *Hofstetter v. Chase Home Finance, LLC*, 751 F. Supp. 2d 1116 (N.D. Cal. 2010), the court rejected the defendant's argument that it had discretion under its mortgage agreement to raise flood insurance without regard to NFIA limits. The court found that "the loan agreements in question did *not* authorize defendants to unilaterally impose or increase mandatory flood insurance requirements to whatever amounts they deemed proper." *Id.* at 1128. The court noted

17

lack of specificity as to what circumstances might change the requirements and "as to *how much* flood insurance would be required." *Id.* (emphasis in original).

Similarly, Plaintiff's Mortgage did not state with any specificity what events would trigger a change in insurance requirements nor did GMAC state what changes would be made. Indeed, the only discussion of flood insurance requirements in the Mortgage is found in the "Notice of Special Flood Hazards," which is co-extensive with the NFIA and limits flood insurance coverage to replacement value, which Plaintiff maintained. No reasonable good faith reading of the Mortgage and Condominium Rider can go beyond these limits.

GMAC also argues that Ms. Cronk cannot state a breach of good faith claim because GMAC was merely following the NFIA requirements. As set forth in detail above, this is untrue. Compl., ¶¶ 35, 41. Moreover, if the NFIA requirements are met, as they were here, then there is no power under the NFIA to force-place additional insurance and GMAC cannot cite the NFIA as a basis for doing so. In sum, Defendant's motion to dismiss Plaintiff's claim for breach of good faith and fair dealing must be denied.

### B. THE COMPLAINT STATES A CLAIM FOR CONVERSION

#### 1. The Complaint Alleges All Elements Of A Conversion Claim

GMAC incorrectly argues that Plaintiff cannot state a claim for conversion. Def. Br. at 16-17, 20-21. "[C]onversion is essentially the wrongful exercise of dominion and control over the property of another in a manner inconsistent with the other person's rights in that property." *Marsellis-Warner Corp. v. Rabens*, 51 F. Supp. 2d 508, 525 (D.N.J. 1999) (*quoting Mueller v. Technical Devices Corp.*, 8 N.J. 201, 207, 84 A.2d 620 (1951)).

The three elements of conversion are: (1) the existence of property; (2) the right to immediate possession thereof belonging to plaintiff; and (3) the wrongful interference with that

right by defendant. *Marsellis-Warner*, 51 F. Supp. at 525 (*citing First Nat'l Bank of Bloomingdale v. New Jersey Trust Co.*, 18 N.J. Misc. 449, 14 A.2d 765 (1940)). Courts recognize a claim for conversion when one party inappropriately seizes money from another party's account. *See Hirsch v. Phily*, 73 A.2d 173, 176-77 (N.J. 1950) (holding the plaintiff set forth a *prima facie* case of conversion when the defendant diverted proceeds from accounts receivable which were specifically assigned to plaintiff for its own use); *Glenfed Fin. Corp., Commercial Fin. Div. v. Penick Corp.*, 647 A.2d 852, 861 (N.J. Super. Ct. App. Div. 1994) (finding conversion of the plaintiff's property by "diverting payments from customers which it had agreed to place in a blocked account for [the plaintiff's] benefit into [the defendant's] operating accounts").

Ms. Cronk's Complaint describes GMAC's scheme to improperly seize her money and states all elements of a conversion claim. First, the Complaint alleges the existence of property in the form of money withdrawn from Plaintiff's escrow account. Compl., ¶ 11 ("GMAC [force] placed Ms. Cronk in a flood insurance policy, withdrew that premium from her escrow account, and increased her mortgage payment"); *see also* Compl., ¶¶ 48, 89. GMAC is simply wrong when it contends that money, which is personal property, is not subject to a conversion claim. *See, e.g.*, *McGlynn v. Schultz*, 90 N.J. Super. 505, 527 (Ch. Div. 1966), *aff'd* 95 N.J. Super. 412 (App. Div. 1967), *cert. denied*, 50 N.J. 409 (1967) ("The tort of conversion has been committed by O.B.A. in diverting the N.C.A. funds.").

The second element of Plaintiff's conversion claim is also sufficiently alleged because the money, though deposited in an escrow account, is clearly Plaintiff's property. An escrow account is "[a] bank account, generally held in the name of the depositor and an escrow agent, that is returnable to the depositor or paid to a third person on the fulfillment of specified

conditions." Black's Law Dictionary (8th ed. 2004). Money in an escrow account remains the property of the depositor until it is appropriately disbursed. *See, e.g.*, *New Jersey State Ordinary v. Thatcher*, 41 N.J.L. 403 (N.J. Sup. Ct. 1879) (transfer of title from the grantor to the grantee does not occur until the happening of the condition or contingency specified by the escrow agreement); *see also In re Mushroom Transp. Co.*, 382 F.3d 325, 338 n.9 (3d Cir. 2004) (legal title to the property in escrow remains in the depositor). Thus, the Complaint satisfies the second element of conversion because the property held in Plaintiff's escrow account is in her possession until it is properly disbursed.

Finally, the third element of conversion is alleged in that GMAC wrongly interfered with Ms. Cronk's right to her property by making unauthorized withdrawals from the escrow account to pay for unauthorized force-placed flood insurance. Compl., ¶ 89 ("GMAC wrongfully withdrew money from Plaintiff's mortgage escrow account, and forced her to make this wrongfully increased payment with the implicit threat of negative credit reporting"); *see also* Compl., ¶¶ 48, 114-119. Thus, the Complaint satisfies the three elements of a conversion claim and GMAC's motion to dismiss must accordingly be denied.

## 2.   No Contract Or Statute Authorized GMAC's Conversion Of Funds

GMAC incorrectly asserts that its scheme to divert Ms. Cronk's money for payment of force-placed flood insurance cannot constitute conversion because its actions were authorized by the Mortgage and the NFIA. Def. Br. at 20-21. As set forth in detail above, however, this is not true. *See supra* at 18-20.

GMAC's defense to Ms. Cronk's conversion claim also fails as a matter of statutory interpretation. GMAC claims that it was justified because the NFIA "requires that GMAC purchase sufficient amounts of flood insurance coverage and charge Plaintiff the costs when

Plaintiff refuses to do so."  Def. Br. at 20 (citing 42 U.S.C. § 4012a(3)(2)).[12]  However, the NFIA

does not provide a basis for force-placing insurance when there is adequate coverage.  Here, the

RCBAP provided coverage that met the maximum coverage payable by the NFIP in the event of

loss.  *See* Compl., ¶¶ 6, 22; National Flood Insurance Handbook at 29 ("The NFIP policy does

not provide coverage for losses in excess of the value of the insurable building.").  Simply put,

the NFIA does not provide GMAC with a defense to conversion, making dismissal of this claim

inappropriate.

## C.     THE COMPLAINT STATES A CLAIM UNDER THE CFA

### 1.     The Complaint Alleges All Elements Of A CFA Claim

The New Jersey Consumer Fraud Act, N.J. Stat. Ann. §§ 56:8-1, *et seq.* ("CFA"),

"affords broad protections to New Jersey consumers. . . . [T]he history of the Act demonstrates a

strong and consistent pattern of expanding the rights of consumers and protecting them from a

wide variety of marketplace tactics and practices . . . ."  *Bosland v. Warnock Dodge, Inc.*, 964

A.2d 741, 743 (N.J. 2009).  To state a claim under the CFA, a plaintiff must allege three

elements: (1) unlawful conduct by the defendants;[13] (2) an ascertainable loss on the part of the

---

[12] Defendant's citation is incorrect making it difficult to determine precisely which provision was referenced.  Regardless, since Plaintiff's RCBAP met the requirements of the NFIA, no statutory provision authorizes or requires Defendant to deduct flood insurance premiums from Plaintiff's escrow account.

[13] The CFA expressly makes the following acts unlawful:

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale or advertisement of any merchandise . . . or with the subsequent performance of such person . . . , whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice.

N.J. Stat. Ann. § 56:8-2.

plaintiff; and (3) a causal relationship between the defendants' unlawful conduct and the

plaintiff's ascertainable loss. *Indian Brand Farms, Inc. v. Novartis Crop Prot., Inc.*, 617 F.3d

207, 219 (3d Cir. 2010); *N.J. Citizen Action v. Schering-Plough Corp.*, 842 A.2d 174, 176 (N.J.

Super. Ct. App. Div. 2003).  Here, the Complaint alleges all three elements.

Importantly, both the New Jersey Supreme Court and Attorney General have found that

charging improper fees for force-placed flood insurance violates the CFA.  In *Gonzalez v.

Wilshire Credit Corp.*, 25 A.3d 1103 (N.J. 2011), a homeowner brought a CFA claim due, in

part, to the mortgage servicer's force-placement of homeowner's insurance after the plaintiff

provided proof of coverage.  *Id.* at 1110.  The New Jersey Attorney General took the position, in

her *amicus* brief, that where a mortgage servicer charges impermissible fees, such as force-

placed flood insurance, and the consumer suffers an ascertainable loss, the consumer has a

cognizable claim under the CFA.  *See id.* at 1113.  The New Jersey Supreme Court ratified that

position, finding in favor of the plaintiff.  *See id.* at 1107 ("Fraudulent lending practices . . . may

be the basis for a Consumer Fraud Act lawsuit."); *id.* at 1116 ("[C]ollecting or enforcing a loan,

whether by the lender or its assignee, constitutes the 'subsequent performance' **within coverage

of the CFA**." (citing N.J. Stat. Ann. § 56:8-2) (emphasis added)); *id.* ("An ascertainable loss

includes, for example, a loss incurred through improper loan packing – forcing a borrower to

purchase unnecessary insurance.").

Ms. Cronk's Complaint satisfies the first element of a CFA claim because GMAC

utilized deception and misrepresentations in carrying out its scheme.  Under the CFA, unlawful

conduct includes "deception, fraud, false pretense, false promise, misrepresentation, or the

knowing concealment, suppression, or omission of any material fact with intent that others rely

on it."  N.J. Stat. Ann. § 56:8-2.  "To constitute consumer fraud . . . the business practice in

22

question must be 'misleading' and stand outside the norm of reasonable business practice in that it will victimize the average consumer . . . ." *Turf Lawnmower Repair, Inc. v. Bergen Record Corp.*, 139 N.J. 392, 655 A.2d 417, 429 (N.J. 1995).

GMAC made deceptive and misleading assertions that satisfy the "unlawful acts" element of a CFA claim.  Its January 5, 2011 letter to Plaintiff asserted that "[t]he terms of your mortgage and/or federal law require you to purchase adequate flood insurance."  *See, e.g.*, Compl., ¶¶ 42, 49.  The requirements GMAC sought to enforce, however, were not included in the Mortgage and are inconsistent with federal law.  When a mortgage lender sends a letter containing false or misleading assertions about the terms of the mortgage contract and federal law to a homeowner as part of an effort to seize money, the lender commits the unlawful conduct envisioned by the CFA.  *See* N.J. Stat. Ann. § 56:8-2.  Additionally, collecting improper and unauthorized fees, such as those imposed due to unnecessary force-placing of insurance constitute unlawful conduct.  *See Gonzales*, 25 A.3d at 1110, 1116 (finding the subsequent performance of a lender in collecting improper fees to be unlawful under the CFA); *id.* at 1114 (discussing New Jersey Attorney General's position that charging impermissible fees pursuant to loan contract violates the CFA).  Thus, the deceptions and misrepresentations in GMAC's letter fall outside the realm of normal business practices and constitute unlawful acts under the CFA.

Ms. Cronk has also adequately alleged an ascertainable loss and causation.  GMAC sent her deceptive form letters demanding that she purchase duplicative and unnecessary flood insurance.  *See, e.g.*, Compl., ¶¶ 42, 49 (describing content of January 16, 2011 letter GMAC sent Plaintiff).  GMAC then force-placed a duplicative and unnecessary flood insurance policy on Ms. Cronk, who sustained an ascertainable loss when she paid the amounts called for in the letter in order to avoid foreclosure and bad credit reports.  Compl., ¶ 48 ("GMAC withdrew these

premium payments directly from Plaintiff's mortgage escrow account."); *see also* Compl., ¶¶ 11, 89.  This loss was directly caused by and related to GMAC's unreasonable demand that Plaintiff purchase duplicative and unnecessary insurance.  As in *Gonzalez*, Plaintiff's ascertainable loss caused by Defendant's action was her payment for forced and unnecessary insurance.  Thus, all three elements of a CFA claim are satisfied and Defendant's motion to dismiss must be denied.

## 2.  The Mortgage's Terms Do Not Defeat Plaintiff's CFA Claim

GMAC incorrectly argues that "where a contractual agreement provides for the actions about which a plaintiff complains, there can be no violation of the CFA."  Def. Br. at 31.  This argument fails because GMAC's deception and misleading statements to Plaintiff are not "contractual provisions."  In fact, the excess insurance scheme actually conflicts with GMAC's waiver of such forced-placed coverage in the Condominium Rider.  *See* Def.'s Ex. C.

GMAC's argument also overstates the cited authority, *Hassler v. Sovereign Bank*, 374 Fed. Appx. 341, 344 (3d Cir. 2010).  In *Hassler*, the plaintiff argued that the defendant bank violated the CFA because the order in which debits and credits were entered into a bank account lead to fees.  *Id.* at 342.  There, however, the contract "explicitly provided for the reordering of charges of which Hassler complains."  *Hassler*, 374 Fed. Appx. at 344.  Here, in contrast, GMAC breached the letter and intent of its agreement.  GMAC had no right to force-place flood insurance under the Mortgage and Condominium Rider where the RCBAP provided for full replacement value.  Thus, GMAC violated the CFA by using deceptive and misleading statements to evade the Condominium Rider's waiver provision and force-place duplicative insurance.

### D.    THE ECONOMIC LOSS RULE DOES NOT PRECLUDE PLAINTIFF'S CONVERSION OR CFA CLAIMS

GMAC incorrectly argues that Ms. Cronk's conversion and CFA claims are barred by the "economic loss rule."  A plaintiff may state a tort cause of action for purely economic loss even if the parties entered into a contract, because the mere existence of a contract cannot preclude an independent, extra-contractual, legal duty.  "Under New Jersey law, a tort remedy does not arise from a contractual relationship unless the breaching party owes an independent duty imposed by law." *Saltiel v. GSI Consultants, Inc.*, 788 A.2d 268, 280 (N.J. 2002) (citing *New Mea Constr. Corp. v. Harper*, 497 A.2d 534, 538-39 (N.J. App. Div. 1985); *Int'l Minerals & Mining Corp. v. Citicorp, N.A., Inc.*, 736 F. Supp. 587, 597 (D.N.J. 1990)).  "[O]bligations imposed by law are tort obligations…[m]isfeasance or negligent affirmative conduct in the performance of a promise generally subjects an actor to tort liability as well as contract liability for physical harm to persons and tangible things…[and d]uties of affirmative action are often imposed by law apart from the promises made." *Saltiel*, 788 A.2d at 276 (citing W. Page Keeton *et al.*, *Prosser & Keeton on the Law of Torts*, § 92, at 655 (5th ed. 1984)).  The economic loss rule, thus, only bars claims that arise out of rights and obligations defined in the contract; it does not bar claims that arise out of an independent duty imposed by law.  *See id.*  For example, a plaintiff could state a cause of action for negligence based purely on economic harm because:

> [A] defendant owes a duty of care to take reasonable measures to avoid the risk of causing economic damages, aside from physical injury, to particular plaintiffs or plaintiffs comprising an identifiable class with respect to whom defendant knows or has reason to know are likely to suffer such damages from its conduct.

*People Express Airlines v. Consol. Rail Corp.*, 495 A.2d 107, 116 (N.J. 1985) (affirming an independent legal duty to refrain from negligently causing economic loss).

Additionally, resolution of this issue is inappropriate at the motion to dismiss stage.  As this Court has previously held, "[w]hether a fraud perpetrated after the execution of the contract

is 'collateral' to the contract is a fact-intensive question we cannot resolve at the dismissal stage." *Owen J. Roberts Sch. Dist. v. HTE, Inc.*, No. 02-cv-7830, 2003 U.S. Dist. LEXIS 2997 (E.D. Pa. Feb. 28, 2003). A similar rule should apply here in evaluating Defendant's conduct and duties.

With respect to Plaintiff's CFA claim in particular, the Complaint alleges that GMAC "misrepresent[ed] to Plaintiff and New Jersey Class members that they were required to procure additional flood insurance[.]" Compl., ¶ 130. GMAC further violated the CFA by misrepresenting that federal law and the terms of the Mortgage required Ms. Cronk to obtain this duplicative and unnecessary flood insurance. Compl., ¶¶ 11, 42. These violations of the CFA arise out of an independent legal duty to refrain from making false and deceptive statements in consumer transactions. The economic loss rule does not bar Ms. Cronk's CFA claims.

Likewise, Ms. Cronk's conversion claim arises out of GMAC's breach of independent legal obligations imposed by law, not by the Mortgage. The Complaint alleges that "GMAC had and continues to have a duty to maintain and preserve its customers' mortgage accounts, HELOC accounts, and mortgage escrow accounts, and to prevent their diminishment or alteration through its own wrongful acts." Compl., ¶ 113. This duty arises out of GMAC's role as servicer for Ms. Cronk's Mortgage. The rights and duties of the mortgage servicer are not contained in Ms. Cronk's Mortgage, but are spelled out in numerous sources, including the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601, *et seq.*, and, more specifically, 12 U.S.C. §§ 2605(g) and 2609, which govern servicers' management of mortgage escrow accounts. GMAC's violations of its duties as mortgage servicer are independent of its obligations as assignee of Ms. Cronk's mortgage to abide by the terms of the mortgage contract. Therefore, its conversion of Plaintiff's escrow funds violates a non-contractual legal duty.

GMAC's contention that the economic loss rule forecloses Plaintiff's claim under the CFA relies on clearly distinguishable decisions by the United States District Court for the District of New Jersey.  Def. Br. at 17.[14]  Unlike in the cases cited by GMAC, Plaintiff has alleged misconduct by GMAC that is extrinsic to the Mortgage.  The alleged misstatements were made in notices sent four years after the Loan closed.  The notices purported to exercise GMAC's rights under the Mortgage, but Ms. Cronk has sufficiently alleged that GMAC did not have the right to send those notices under the Mortgage.  Rather, GMAC's invoking of the Mortgage and federal law is precisely what is misleading about the notice.  Similarly, the conversion alleged by Plaintiff is extrinsic to the Mortgage.  While GMAC converted Plaintiff's personal property purportedly under right conferred by the Mortgage, Plaintiff has adequately alleged that the conversion was not a right GMAC had under the contract.  Thus, the economic loss doctrine cannot operate to bar Ms. Cronk's claims.

**E.       THE COMPLAINT STATES A CLAIM FOR UNCONSCIONABILITY**

In the alternative to Plaintiff's breach of contract claim, the Complaint alleges that the terms of the Mortgage and Condominium Rider are unconscionable to the extent GMAC is

---

[14] In *Traversa v. Home Depot U.S.A., Inc.*, No. 07-cv-1324, 2007 WL 312468, at *3 (D.N.J. Oct. 23, 2007), the court dismissed a plaintiff's CFA claim because the claim arose solely out of alleged misstatements in the contract itself.  Here, GMAC's misstatements and misconduct are extrinsic to the contract.  In *Farash & Robbins, Inc. v. Fleet Nat'l Bank*, 03-cv-361, 2005 WL 3465659, at *5-6 (D.N.J. Dec. 16, 2005), the court held – on a **motion for summary judgment** – that the plaintiff's claims were barred by economic loss because they alleged derogation in the bank's duties under the contract.  Here, Plaintiff alleges that GMAC took actions wholly outside the contract.  In *Arcand v. Brother Int'l Corp.*, 673 F. Supp. 2d 282, 311 (D.N.J. 2009) and *Titan Stone, Tile & Masonry, Inc. v. Hunt Constr. Group, Inc.*, No. 05-cv-3362, 2007 WL 174710 (D.N.J. Jan. 22, 2007), the court dismissed conversion claims arising out of contracts for goods in services.  In *Arcand*, the plaintiff alleged the goods purchased in accordance with the UCC were defective.  In *Titan Stone*, the plaintiff alleged that defendant intended never to pay for plaintiff's services.  Here, by contrast, the activities at issue are extrinsic to the contract, namely that GMAC, without authority under law or contract, force-placed excessive and unnecessary insurance on Plaintiff and made false and misleading statements – also outside the contract – regarding GMAC's power and authority to do so.

afforded *carte blanche* to impose any insurance requirements it sees fit without any limit of good faith.  GMAC cites several provisions in the Mortgage as giving it the ability to change insurance requirements.  *See, e.g.*, Def. Br. at 3 ("The Mortgage made clear that the lender could change the flood insurance amount during the term of the loan.").  These contractual provisions were obtained by GMAC due to procedurally unconscionable bargaining disparities.  GMAC has cited these provisions as giving it the power, which it has exercised, to force-place unconscionably excessive flood insurance policies.  Plaintiff seeks the Court's intervention to shield Plaintiff from this practice, strip the contract of this provision, and return the excessive premiums.

A contract is "unconscionable" if enforcement of its terms is manifestly unfair and is dictated by a dominant party.  *Howard v. Diolosa*, 574 A.2d 995, 999 (N.J. Super. 1990).  "A party raising a claim of unconscionability has the burden of showing 'some over-reaching or imposition resulting from a bargaining disparity between the parties, or such patent unfairness in the terms of the contract that no reasonable man not acting under compulsion or necessity would accept them.'"  *Smith v. TA Operting, LLC*, No. 10-2563, 2011 WL 3667507, at *5 (D.N.J. Aug. 19, 2011) (quoting *Rotwein v. Gen Accident Group*, 247 A.2d 370, 377 (N.J. Super. 1968)).  Thus, in order to assert a claim for unconscionability, a plaintiff must show both procedurally and substantively unconscionable elements.  *Sitogum Holdings, Inc. v. Ropes*, 800 A.2d 915, 921 (N.J. Super. 2002).

Plaintiff has pleaded facts sufficient to maintain that the Mortgage was substantively unconscionable.  GMAC's contract – according to GMAC – affords it with unbridled discretion to impose any insurance requirement irrespective of reason.  *See* Def.'s Ex. A ¶ 5.  As exercised, GMAC imposed an additional, excessive flood insurance policy on Plaintiff even though Plaintiff's RCBAP covered the full replacement value of her Condo.  *See* Compl., ¶¶ 37-38, 46;

*see also* Compl., ¶ 107(f) ("Nowhere in GMAC's mortgages or HELOCs is there any indication

that a homeowner will be forced to purchase flood insurance that duplicates protection already

provided by the homeowner's condominium owners' association RCBAP policy.").  Neither

Plaintiff nor GMAC could benefit in the event of a flood loss from the force-placed insurance

coverage because the Condo was already fully insured.  *See* Compl., ¶¶ 22, 26.  GMAC does,

however, profit from its arrangement with third party insurers who write the force-placed

policies.  *See* Compl., ¶¶ 66-67, 70.  If GMAC is determined to have a contractual right to force-

place a policy under these circumstances, that contractual right is substantively unconscionable.

　　　The circumstances surrounding contract formation are procedurally unconscionable due

to disparities in sophistication of the parties and the unduly complex and nuanced language that

Defendant points to in order to justify the force-placed insurance.  "[T]he great disparity in the

parties' relative bargaining power [and] the inconspicuous and incomprehensible nature of the

contract language involved" satisfies the procedural unconscionability element.  *See* Compl., ¶

108.  GMAC, a large bank, and Plaintiff, a lone consumer, have obviously disparate bargaining

positions.  The contract language failed to put Plaintiff on reasonable notice of what powers

GMAC reserved for itself.  GMAC's actions, the contract language, and GMAC's alleged right

to take these actions all support a finding that GMAC's power to set insurance requirements in

this fashion is unconscionable.

### F.　　THE COMPLAINT STATES A CLAIM UNDER TILA

　　　The Complaint alleges that Defendant violated TILA by changing the terms of Plaintiff's

Mortgage to require more insurance than authorized and failing to disclose insurance premiums

for the new (amended) agreement.  The purpose of TILA is to assure "meaningful disclosure of

credit terms" and "protect the consumer against inaccurate and unfair credit billing" practices.

29

15 U.S.C. § 1601(a); *Wulf v. Bank of America, N.A.*, No. 10-5176, 2011 WL 2550628, at *10

(E.D. Pa. Jun. 27, 2011).  In order to implement these requirements, TILA and its implementing

regulations, known as "Regulation Z," require creditors to make certain specific disclosures

mandated by the statute.  *See, e.g.*, 15 U.S.C. §§ 1638-39 and 12 C.F.R. §§ 226.18-20.  The

statute and regulations also impose a "General Disclosure Requirement" to truthfully and

accurately disclose the terms of the legal obligation between the parties.  12 C.F.R. § 226.17(c);

*see also Rossman v. Fleet Bank, N.A.*, 280 F.3d 384, 393 (3d Cir. 2002) ("TILA prohibits not

only failures to disclose, but also false or misleading disclosures.").  GMAC fixates on Plaintiff's

failure to address her Complaint to one of the specific disclosure requirements, but fails to

address the general disclosure requirement of "truth in lending" mandated by TILA.  GMAC

violated TILA by falsely stating Plaintiff's legal obligations under the Mortgage and federal law.

### 1.  GMAC Violated 12 C.F.R. § 226.17(c) By Misrepresenting The Terms Of The Legal Obligations Between The Parties

GMAC violated TILA by falsely claiming in its notices to Plaintiff that the terms of her

Mortgage and/or federal law required Plaintiff to maintain flood insurance in excess of her

RCBAP that provided full replacement coverage.  TILA prohibits "not only literal falsities, but

also misleading statements." *Roberts v. Fleet Bank, N.A.*, 342 F.3d 260, 266 (3d Cir. 2003)

(internal quotation marks omitted); *Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 412 (1998)

("[TILA] requires creditors to provide borrowers with clear and accurate disclosure of terms.").

GMAC's duty to truthfully disclose the terms of Ms. Cronk's mortgage is ongoing in

nature, and applies to both initial disclosures at the time of loan origination and subsequent

disclosures. *See Hubbard v. Fidelity Fed. Bank*, 91 F.3d 75, 79 & n.7 (9th Cir. 1996) (rejecting

argument that 12 C.F.R. § 226.17(c) "only applies to disclosures before consummation of the

transaction").  When a mortgage assignee sends out false notices misstating the borrower's

obligations, those notices violate TILA.  *See Hubbard*, 91 F.3d at 79 (defendant's "payment

adjustment notices were required to reflect the loan agreement"); *Demando v. Morris*, 206 F.3d

1300, 1303 (9th Cir. 2000) ("Because the Notice contained terms that were in violation of the

credit agreement, the Notice violated Regulation Z.").

GMAC's flood insurance notices to Ms. Cronk misstated that the terms of the Mortgage

required her to purchase additional insurance when, in fact, this was not true.  *See* Compl., ¶¶ 42,

49.  GMAC's deceptive letters violated TILA, 12 C.F.R. § 226.17(c).

GMAC also violated TILA by misstating that federal flood insurance requirements

required it to force-place flood insurance.  FEMA's FLIP Mandatory Purchase of Flood

Insurance Guidelines (September 2007), at 46 explains "[T]he RCBAP, insured to its full

replacement cost value (RCV) to the extent possible under the NFIP, is the correct way to insure

a residential condominium building against flood loss."  Plaintiff provided GMAC with proof

that her Owners Association maintained an RCBAP equal to the replacement cost value of the

entire condominium complex.  Compl., ¶¶ 9, 41, 86.  Nevertheless, GMAC sent her a letter

claiming that federal law or her mortgage required her to obtain more.  Compl., ¶ 42.  These

letters and notices mischaracterize Plaintiff's legal obligations under the NFIA and violate TILA,

12 C.F.R. § 226.17.

Two courts have already held that requiring flood insurance in excess of amounts allowed

under the mortgage and in excess of federal flood insurance requirements can violate TILA.  In

*Hofstetter v. Chase Home Finance, LLC*, 751 F. Supp. 2d 1116, 1129-30 (N.D. Cal. 2010), the

court held that flood insurance notices stating that a borrower needed to maintain flood insurance

equal to the lesser of $250,000 or the replacement cost value of the borrower's property violated

TILA when federal regulations and the borrower's mortgage actually required the borrower to

maintain flood insurance equal to the borrower's loan balance.  More recently, Judge

McLaughlin in this District adopted Magistrate Judge Hey's similar determination in *Wulf v.*

*Bank of America*.  2011 WL 2550628, at *12.  The same result should be reached here.

### 2. GMAC Violated 12 C.F.R. § 226.18 By Failing To Provide Plaintiff With New Credit Disclosures

GMAC also violated TILA when it failed to supplement its credit disclosures to account

for the new flood insurance coverage that it demanded and force-placed.  GMAC argues that it

was not required to make supplemental disclosures because there was no refinance, assumption,

or variable rate adjustment.  Def. Br. at 25.  This argument misses the point.  Ms. Cronk does not

allege that GMAC refinanced her debt, but rather that GMAC changed the terms of her original

Mortgage by requiring flood insurance that was not authorized in the original Mortgage, thereby

creating a new transaction.  Compl., ¶ 99.  Changing the terms of a mortgage agreement to

require and force-place unauthorized flood insurance constitutes a new transaction that triggers a

new set of disclosures under 12 C.F.R. § 226.18; *Travis*, 880 F. Supp. 1229-30 ("Defendant's

purchase of the allegedly unauthorized insurance and the subsequent addition of the resulting

premiums to Plaintiffs' existing indebtedness constituted a new credit transaction" that "required

new disclosures" under 12 C.F.R. § 226.18.); *Vician v. Wells Fargo Home Mortgage*, 2006 WL

694740, *5 ("Wells Fargo's actions in force-placing insurance on Plaintiffs' account may have

triggered new disclosures under section 226.18 of Regulation Z….  Consequently, although

Plaintiffs may have failed to state a TILA claim under section 226.20 of Regulation Z, the Court

finds that Plaintiffs have certainly stated a TILA claim under section 226.18 of Regulation Z.").[15]

---

[15] Even where the force-placement of insurance is authorized—which it was not here—"[t]he creditor may…be required to make new disclosures."  12 C.F.R. pt. 226, Supp. I, § 17(e), cmt. 1.

Although GMAC argues that insurance premiums are not considered "finance charges" if the borrower is free to select the insurance carrier, Def. Br. at 25-26, this rule does not apply where a lender demands and force-places insurance that is unauthorized in the mortgage or federal regulations. *See Bermudez v. First of Am. Bank Champion, N.A.*, 860 F. Supp. 580, 601 (N.D. Ill. 1994), *withdrawn pursuant to settlement*, 886 F. Supp. 643 (N.D. Ill. Mar 22, 1995) ("If a factfinder found such charges to be unauthorized, then it could also find that the charging of plaintiffs' accounts for the cost of that insurance…[was] a finance charge."); *accord Travis*, 880 F. Supp. at 1229-30 (premiums for unauthorized insurance constitute "finance charges"). Similarly, the court in *Hofstetter* specifically held that Chase was subject to liability under the TILA for failing to make mandatory "finance charge" disclosures in connection with the flood insurance that it demanded and force-placed over and above federal requirements. *Hofstetter*, 751 F. Supp. 2d at 1128.

### 3. Plaintiff's TILA Claims Are Timely

Plaintiff's TILA claims accrued in January 2011 when GMAC first impermissibly changed the terms of her mortgage agreement. Plaintiff filed her complaint on August 12, 2011, well within TILA's one-year statute of limitations. In *Wulf*, Judge McLaughlin adopted the determination that a TILA claim "based on the change in flood insurance requirements and the alleged misrepresentation regarding those requirements" accrues, and TILA's statute of limitations begins to run, on the date when the plaintiff is notified of the change in her mortgage terms. *Wulf*, 2011 WL 2550628, at *12-13; *see also Hofstetter*, 751 F. Supp. 2d at 1123-24. Ms. Cronk's claim is not time-barred.

Moreover, even if Plaintiff's claims did somehow accrue as of the date of loan origination, it would be inequitable to apply TILA's one-year statute of limitations to bar her

claims.  The Third Circuit has recognized "three principal, though not exclusive, situations" in which equitable tolling is appropriate, including "where the defendant has actively misled the plaintiff respecting the plaintiff's cause of action."  *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1387 (3d Cir. 1994).  Here, Defendant changed Plaintiff's mortgage flood insurance requirements without notice.  Defendant actively concealed its TILA violations prior to this change by misrepresenting that federal law and Plaintiff's Mortgage would not require them to obtain higher levels of flood insurance.  Additionally, Defendant accepted Plaintiff's RCBAP as adequate under federal law.  Then, after the statutory period had run, Defendant revealed the nature of the misrepresentation by imposing insurance requirements over and above the maximum insurable value.  This misrepresentation concealed the change in mortgage terms that is the subject of this action and prevented Plaintiff from discovering GMAC's wrongdoing.

### 4.  <u>GMAC Is A Proper Defendant Under TILA</u>

Defendant's argument that GMAC is not a "creditor" and therefore cannot be sued for a violation of TILA is disingenuous at best.  GMAC was Ms. Cronk's "creditor" under TILA at the time it changed the terms of her credit agreement.[16]  Defendant erroneously claims that Ms. Cronk's TILA claim fails because GMAC was not her creditor as described in 15 U.S.C. § 1602(f).  *See* Def. Br. at 22.  This argument also rests on the faulty premise that Plaintiff's TILA claim arose out of representations made at loan origination.  At the time GMAC modified its

---

[16] Even if the appropriate time at which to determine "creditor" status was at closing of the Loan, GMAC remains a proper defendant under TILA as a voluntary assignee.  "A creditor's 'assignee' . . . may also be held liable for a creditor's TILA violations in loan transactions involving real property if the assignment is voluntary and the TILA violation at issue 'is apparent on the face of the disclosure statement provided in connection with such transaction pursuant to this subchapter.'"  *Roach v. Option One Mortgage Corp.*, 598 F. Supp. 2d 741, 750 (E.D. Va. 2009) (quoting 15 U.S.C. § 1641(e)(1)).  Here, the violation was a failure to disclose a change in Ms. Cronk's loan terms, as required by TILA, and GMAC voluntarily received assignment of Ms. Cronk's loan.  Thus, Defendant's conduct and status clearly indicate the type of liability foreseen under 15 U.S.C. § 1641.

flood insurance requirements for Plaintiff's Mortgage, it owned Plaintiff's Mortgage and was the "creditor" or "lender" for the Mortgage.  The fact that GMAC did not initially extend credit to Plaintiff is irrelevant.  As Magistrate Judge Hey noted in *Wulf*, where the plaintiff alleges "Defendant[] obtained flood insurance in breach of the mortgage, it is plausible that the inaccuracy of the original disclosures was caused by Defendant['s] departure from the mortgage documentation.  Thus, Plaintiff[] has stated a claim that [she] was entitled to new disclosures under TILA."  *Wulf*, 2011 WL 2550628, at *12.  After origination, Defendant made a misleading demand for additional insurance in January 2011 and this action altered the terms of Plaintiff's mortgage, creating a new loan obligation and triggering new TILA disclosures.

### 5.  GMAC Cannot Avail Itself Of The "Safe-Harbor" Provision Because The Change In Requirements Will Amount To More Than $100 Over The Life Of The Loan

Defendant argues that TILA provides a safe harbor with respect to inaccurate disclosures of finance charges if the amount disclosed does not vary from the actual finance charge by more than $100.  Def. Br. at 27 (citing 15 U.S.C. § 1605(f)(1)).  However, the finance charge disclosure, as evidenced by the TILA disclosure provided at loan closing, accounts for *all* finance charges to be incurred over the life of the loan and aggregates those charges.  Although the increased finance charge due to Defendant's TILA violation amounts to approximately $26 for 2011, the increase is in excess of $600 for the life of the loan.  Defendant cannot avail itself of the safe harbor provision based on a single finance charge when Defendant admits that it changed a policy that will ultimately result in annual charges that total far more than $100 over the life of the loan.

### G.  THE COMPLAINT STATES A CLAIM UNDER THE NJTCCA

Defendant argues that Plaintiff fails to state a claim under New Jersey's Truth-In-Consumer Contract, Warranty and Notice Act, N.J. Stat. Ann. § 56:12-15 ("NJTCCA").  Def. Br.

at 32-34.  The NJTCCA provides a cause of action when a defendant offers "any written consumer contract … which includes any provision that violates any clearly established legal right of a consumer or responsibility of a seller, lessor, creditor, lender or bailee as established by State or Federal law at the time the offer is made."  N.J. Stat. Ann. § 56:12-15; *Mullin v. Auto. Prot. Corp.*, No. 07-3327, 2008 WL 4509612, at *4 (D.N.J. Sept. 29, 2008).  "The NJTCCA can be violated if a contract or notice simply contains a provision prohibited by state or federal law…."  *Barows v. Chase Manhattan Mortgage Corp.*, 465 F. Supp. 2d 347, 362 (D.N.J. 2006).  Here, Defendant's force-placed insurance scheme violates at least two of Plaintiff's established legal rights.

First, Plaintiff's NJTCCA claim withstands Defendant's motion because the Complaint alleges that GMAC violated Plaintiff's established legal rights under TILA.  See *supra* at 29-35 (discussing TILA violations).  The duty to make truthful and accurate disclosures is an ongoing duty, and applies to both subsequent disclosures and initial disclosures at the time of the transaction.  *See Hubbard v. Fidelity Fed. Bank*, 91 F.3d 75, 79 & n.7 (9th Cir. 1996) (rejecting defendant's argument that 12 C.F.R. § 226.17(c) "only applies to disclosures before consummation of the transaction").  Thus, where a creditor sends out notices, after the date of the transaction, which misstate the borrower's obligations, such notices give rise to liability under TILA.  *See Hubbard*, 91 F.3d at 79 (defendant's "payment adjustment notices were required to reflect the loan agreement").  Here, it was more than four years after the closing of her Loan, that Plaintiff received notice from GMAC demanding additional flood insurance coverage.  Compl., ¶ 39.  In retroactively modifying the agreement, GMAC did not accurately disclose flood insurance obligations.  Thus, GMAC violated Plaintiff's clearly established rights under TILA which gives rise to a colorable claim under the NJTCCA.

36

Second, Plaintiff states a NJTCCA claim because GMAC violated the CFA.  *See supra* at 21-24.  Because GMAC violated Plaintiff's clearly established rights under the CFA, the violation gives rise to a colorable claim under NJTCCA.

Finally, while not alleged in the Complaint, GMAC also appears to have violated certain provisions of the Dodd-Frank Act that specifically preclude changes in contracts for flood insurance unless they are *bona fide* and reasonable.  Section 2605(m) of the Real Estate Settlement and Procedure Act ("RESPA"), 12 U.S.C. §§ 2601, *et seq.*, provides that "[a]ll charges ... related to force-placed insurance imposed on the borrower by or through the services shall be *bona fide* and reasonable." 12 U.S.C. § 2605(m).  Sections 2605(k)-(m) of RESPA were enacted on July 21, 2010 by section 1463 of the Dodd Frank Wall Street Reform and Consumer Protection Act of 2010 ("Dodd–Frank Act").  *See* Dodd–Frank Act, Pub. L. No. 111–203, 124 Stat. 1376 (2010), at § 1463.  Here, GMAC's force-placed insurance charges are neither *bona fide* nor reasonable.  "Bona fide" is defined as "made in good faith; without fraud or deceit." Black's Law Dictionary 199 (9th ed. 2004).  Here, the charges unilaterally imposed on Plaintiff were not *bona fide* and reasonable because they: (a) are for coverage that exceeds the full replacement value for the Condo – the maximum that can be paid under NFIA policy; and (b) exceed rates that are commercially available.  Compl. ¶¶ 67-68.  *See Williams v. Wells Fargo Bank, N.A.*, No. 11-cv-21233, 2011 WL 4901346 (S.D. Fla. Oct. 14, 2011) (finding the plaintiff stated a claim for unjust enrichment against Wells Fargo based on excessive rate of insurance). Moreover, the charges are unreasonable because the force-placed insurance is above and beyond the relevant NFIA requirements.  *See* Compl., ¶ 24.  Thus, Plaintiff has also stated a NJTCCA claim because GMAC's force-placed insurance scheme violates Plaintiff's clearly established rights under the Dodd-Frank Act.

37

### H.     THE VOLUNTARY PAYMENT RULE DOES NOT BAR PLAINTIFF'S CLAIMS

In a last ditch effort to avoid responsibility for its scheme to force-place excessive and unnecessary flood insurance, GMAC argues that all of Plaintiff's claims are barred by the common law voluntary payment rule.  Def. Br. at 34-35.  The rule provides that where a party, without mistake of fact, or fraud, duress or extortion, voluntarily pays money on a demand which is not enforceable against him, he cannot recover it back.  *Rickenbach v. Wells Fargo Bank, N.A.*, 635 F. Supp. 2d 389, 395 (D.N.J. 2009).  The voluntary payment rule, however, does not bar Plaintiff's claims for at least two good reasons.

First, the voluntary payment rule is inapplicable because GMAC devised its scheme to coerce payment.  Plaintiff's Complaint alleges that she had "no choice but to pay the premiums, because they … become part of [the] loan balance, which means GMAC can make negative reports about the borrower."  Compl., ¶ 8; *see also* Compl., ¶¶ 48. 89.  A payment "is not voluntary when the plaintiff believed that the law which imposed it was not valid, but made the payment anyway."  *N.J. State Bar Ass'n v. Berman*,  611 A.2d 1119, 1128 (N.J. Super. Ct. App. Div. 1992).  Such situations generally arise when a plaintiff pays a fee that he believes is invalid, but pays it anyway so that he can continue to practice his profession or continue his business. *Rickenbach*, 635 F. Supp. 2d at 395.  Here, Plaintiff's payments were made to protect her vital credit rating and maintain homeownership.  As GMAC knows well, the lowering of a credit score can lead to increased interest payments and potentially foreclosure.  By invoking the voluntary payment rule, GMAC is willfully ignoring the highly coercive elements of its scheme.

Second, Defendant's invocation of the rule is premature.  Courts in this circuit do not apply the rule at the motion to dismiss stage "where the complaint does not establish whether the plaintiff's payment was truly voluntary and made without mistake of fact."  *Rickenbach*, 635 F.

Supp. 2d at 395.  Here, Plaintiff has alleged that coercion is an integral part of GMAC's

wrongdoing.  Compl., ¶¶ 8, 48, 89.  Accordingly, invocation of the voluntary payment rule is

premature and GMAC's motion to dismiss must be denied.

## IV.    **CONCLUSION**

For the foregoing reasons, GMAC's motion to dismiss should be denied.[17]


Dated: November 22, 2011                        Respectfully submitted,


                                                /s/_____
                                                Eric L. Cramer, Atty ID # 69289
                                                Shanon J. Carson, Atty ID # 85957
                                                Patrick F. Madden, Atty ID # 309991
                                                BERGER & MONTAGUE, P.C.
                                                1622 Locust Street
                                                Philadelphia, PA  19103
                                                Telephone: (215) 875-4656
                                                Facsimile: (215) 875-4604

                                                Brett Cebulash
                                                Kevin S. Landau
                                                TAUS, CEBULASH & LANDAU, LLP
                                                80 Maiden Lane, Suite 1204
                                                New York, NY 10038
                                                Telephone: (212) 931-0704
                                                Facsimile: (212) 931-0703

---

[17] To the extent the Court grants GMAC's Motion, Plaintiff respectfully request the opportunity to amend and correct whatever deficiencies the Court finds.  It is well settled that leave to amend "shall be freely given when justice so requires."  *Arthur v. Maersk, Inc.*, 434 F.3d 196, 202 (3d Cir. 2006).  Plaintiff has engaged in no undue delay or bad faith.  *See Reszler v. Travelers Prop. Cas. Ins.*, No. 06-586, 2007 WL 1035024, *4 (D.N.J. Apr. 3, 2007).  Furthermore, leave to amend would not prejudice GMAC.  *Id.*

Kendall S. Zylstra
FARUQI & FARUQI, LLP
101 Greenwood Avenue
Suite 600
Jenkintown, PA  19046
Telephone: (215) 277-5770
Facsimile: (215) 277-5771

David M. Taus
DEVERO TAUS LLC
211 Somerville Road, Suite B
Bedminster, New Jersey 07921
Telephone:  (908) 375-8142
Facsimile:  (908) 375-8151

Brent Walker
CARTER WALKER PLLC
2171 West Main Street, Suite 200
Cabot, AR 72023
Telephone: (501) 605-1346
Facsimile: (501) 605-1348

Steven A. Owings
OWINGS LAW FIRM
1400 Brookwood
Little Rock, AR 72202
Telephone:  (501) 661-9999
Facsimile: (501) 661-8393

*Attorneys for Plaintiff Elizabeth Cronk*