## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF PENNSYLVANIA

| |
|---|
| ELIZABETH CRONK, individually and on behalf of all others similarly situated, |
|         Plaintiff, |
|    v. |
| GMAC MORTGAGE, LLC, |
|         Defendant. |

Case No.:  2:11-cv-5161

## REPLY BRIEF IN SUPPORT OF THE
## MOTION TO DISMISS OF DEFENDANT GMAC MORTGAGE, LLC

Henry F. Reichner
Joe N. Nguyen
**REED SMITH LLP**
2500 One Liberty Place
1650 Market Street
Philadelphia, PA 19103-7301
Telephone No. (215) 851-8100
Facsimile No.  (215) 851-1420

*Attorneys for Defendant*
*GMAC Mortgage, LLC*

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ...................................................................................... 1

II.   ARGUMENT .......................................................................................... 1

     A.    Plaintiff Ignores The Plain Language Of The Mortgage ....................... 1

     B.    The Loan Documents Did Not Waive The Insurance Requirement For All Time ........................................................................................................ 3

     C.    Setting The Amount Of Flood Insurance Using Hazard Insurance Replacement Value Was A Proper Exercise Of GMAC's Contractual Discretion ................................................................................................ 5

     D.    Because Her Conversion And CFA Claims Arise Out Of GMAC's Exercise Of Its Contractual Discretion, Plaintiff Cannot Avoid The Economic Loss Doctrine ..................................................................... 7

     E.    Plaintiff Misconstrues The Other Grounds For Dismissing The Conversion Claim ...................................................................................................... 9

     F.    Plaintiff's CFA Claim Also Fails Because GMAC Exercised A Contractual Right ................................................................................... 9

     G.    Plaintiff Has Not Established An Affirmative "Unconscionability" Damages Claim ................................................................................... 11

     H.    TILA Did Not Require That GMAC Make Additional Disclosures ................... 12

     I.    The Dodd-Frank Act Does Not Save Plaintiff's TCCWNA Claim ...................... 14

     J.    There Must Be More Than A Mere Threat Which Might Possibly Result In Injury At Some Future Time To Avoid Application Of The Voluntary Payment Doctrine ............................................................................... 14

III.  CONCLUSION ...................................................................................... 15

## TABLE OF AUTHORITIES

**Cases**

*Abrevaya v. VW Credit Leasing, Ltd.*,
No. 09-00521, 2009 WL 8466868 (E.D. Pa. Jul. 22, 2009) ........................................14

*Adams v. GMAC Mortg. Corp. of Pa.*,
No. 94-3233, 1994 WL 702639 (N.D. Ill. Dec. 14, 1994) ........................................13

*Bermudez v. First of Am. Bank Champion, N.A.*,
860 F. Supp. 580 (N.D. Ill. 1994)..................................................................13

*Bowmer v. NovaStar Mortg. Funding Trust, Series 2006-1*,
711 F. Supp. 3d 390 (E.D. Pa. 2010)..............................................................12

*CoreStates Bank, N.A. v. Cutillo*,
723 A.2d 1053 (Pa. Super. Ct. 1999) .................................................................6

*Demando v. Morris*,
206 F.3d 1300 (9th Cir. 2000) ........................................................................12

*Doss v. Cuevas*,
985 So. 2d 740 (La. App. 1st Cir. 2008) ...........................................................6

*Emerson Radio Corp. v. Orion Sales Inc.*,
80 F. Supp. 2d 307 (D.N.J. 2000)......................................................................7

*Frederico v. Home Depot*,
507 F.3d 188 (3d Cir. 2007) ...........................................................................11

*Gonzalez v. Wilshire Credit Corp.*,
254 A.3d 1103 (N.J. 2011) ...........................................................................10

*Hassler v. Sovereign Bank*,
374 Fed. Appx. 341 (3d Cir. 2010) ...............................................................5, 10

*Hayes v. Wells Fargo Home Mortg.*,
No. 06-1791, 2006 WL 3193743 (E.D. La. Oct. 31, 2006)........................................2, 4

*Hofstetter v. Chase Home Finance, LLC*,
No. 10-01313, 2010 WL 4606478 (N.D. Cal. Oct. 29, 2010) ...................................7

*Hubbard v. Fidelity Fed. Bank*,
91 F.3d 75 (9th Cir. 1996) ..............................................................................12

*In re Meritt Logan, Inc.*,
901 F.2d 349 (3d Cir. 1990) ............................................................................8

*Kolbe v. BAC Home Loans Servicing, L.P.*,
No. 11-10312, 2011 WL 3665394 (D. Mass. Aug. 18, 2011)...................................1, 2

*Lass v. Bank of America*,
No. 11-10570, 2011 WL 3567280 (D. Mass. Aug. 18, 2011)...................................1, 2

*Lind v. New Hope Property, LLC*,
No. 09-3757, 2010 WL 1493003 (D.N.J. Apr. 13, 2010) ........................................11

*Morgan v. Litton Loan Servicing LP*,
    No. 10-1865, 2010 WL 3464691 (D. Md. Sep. 8, 2010)........................................6

*N.J. Citizen Action v. Schering-Plough Corp.*,
    842 A.2d 174, 176 (N.J. Super. Ct. App. Div. 2003) .................................11

*Nicholson v. Countrywide Home Loans*,
    No. 107-cv-03288, 2008 WL 731032 (N.D. Ohio Jan. 7, 2008)..................6

*Owen J. Roberts Sch. Dist. v. HTE Inc.*,
    No. 02-7830, 2003 U.S. Dist. LEXIS 2997 (E.D. Pa. Feb. 28, 2003)........................8

*Pailes v. HSBC Mortg. Servs.*,
    No. 10-11509, 2011 WL 2791043 (D. Mass. Jul. 17, 2011) ..............................2

*Pauley v. Bank One Colorado Corp.*,
    205 B.R. 272 (D. Colo. 1997) ....................................................13

*People Express Airlines v. Consol. Rail Corp.*,
    495 A.2d 107 (N.J. 1985) ........................................................8

*Porter v. Nationscredit Cons. Discount Co.*,
    No. 03-03768, 2007 WL 30117........................................................12

*Rivera v. Washington Mut. Bank*,
    637 F. Supp. 2d 256 (D.N.J. 2009)................................................14

*Roberts v. Fleet Bank, N.A.*,
    342 F.3d 260 (3d Cir. 2003) ......................................................12

*Rossman v. Fleet Bank, N.A.*,
    280 F.3d 384 (3d Cir. 2002) ......................................................12

*Vican v. Wells Fargo Home Mortg.*,
    No. 05-114, 2006 WL 69470 (N.D. Ind. Mar. 16, 2006) ..............................4

*Williams v. Wells Fargo Bank, N.A.*,
    No. 11-21233, 2011 WL 4901346 (S.D. Fla. Oct. 14, 2011) ......................2, 14

*Wulf v. Bank of America, N.A.*,
    No. 10-5176, 2011 WL 2550628 (E.D. Pa. June 27, 2011) ......................8, 12

**Statutes**

42 U.S.C. § 4012a(e)(1)........................................................................4

42 U.S.C. § 4012a(e)(2)........................................................................4, 9

42 U.S.C. § 4012a(f)........................................................................6

**Regulations**

12 C.F.R. § 226.4........................................................................13

12 C.F.R. §226.4(d)(2)........................................................................13

12 C.F.R. § 226.17(c)........................................................................12

12 C.F.R. § 226.20.................................................................................................................13

**Other Authorities**

FEMA Mandatory Purchase of Flood Insurance Guidelines (September 2007).....................2, 5, 6

## I.   INTRODUCTION

*"[The Fannie Mae form language] unambiguously gave defendants the discretion to determine the appropriate amount of flood insurance and to purchase that insurance on plaintiff's behalf should she fail to do so."*[1]

*"The mortgage provision also gives the lender the right to change the amount of required [flood] insurance if necessary."*[2]

Plaintiff's opposition to GMAC's Motion to Dismiss rests on the incorrect belief that GMAC had no right under the loan documents to determine the amount of flood insurance needed to protect the interests of both the borrower and lender.   To reach this conclusion, however, Plaintiff's papers studiously avoid the straightforward contractual provisions that specifically granted the lender the right to determine the required amount of insurance for the property that served as security for the loan and to purchase such amount should its borrower refuse to do so.   Instead, Plaintiff tries to argue that these rights were waived at the time of closing and, accordingly, until the end of days.   This "waiver" argument, however, finds no support in the Complaint or the loan documents, and ignores the fact that the documents explicitly give the lender the right to change the conditions for any waiver.   Simply stated, Plaintiff's Complaint should be dismissed with prejudice.

## II.   ARGUMENT

### A.   Plaintiff Ignores The Plain Language Of The Mortgage

The Mortgage explicitly and unambiguously provides GMAC with the right to require that Plaintiff maintain insurance coverage in an amount that is satisfactory to GMAC, not

---

[1]   *Lass v. Bank of America*, No. 11-10570, 2011 WL 3567280 (D. Mass. Aug. 18, 2011) (rejecting the same arguments Plaintiff proffers here and granting dismissal).

[2]   *Kolbe v. BAC Home Loans Servicing, L.P.*, No. 11-10312, 2011 WL 3665394 (D. Mass. Aug. 18, 2011) (rejecting the same arguments Plaintiff proffers here and granting dismissal).

Plaintiff. *See* Mortgage, p. 6, § 5.   While Plaintiff might philosophically disagree with the required amount or how GMAC calculates that amount, Plaintiff's disagreement does not equate to a cause of action. *See* FEMA Mandatory Purchase of Flood Insurance Guidelines ("FEMA Guidelines") (September 2007), p. 27 ("The terms and conditions of the hazard clause contained in the loan document fully describe the rights and conditions of the parties.").[3]

In her Opposition, Plaintiff simply ignores this plain language and the decisions rejecting the same arguments that Plaintiff proffers here. *See Kolbe*, 2011 WL 3665394 at *3; *Lass*, 2011 WL 3567280 at *3; *Hayes v. Wells Fargo Home Mortg.*, No. 06-1791, 2006 WL 3193743, at *4 (E.D. La. Oct. 31, 2006).   Instead of addressing the language of the loan documents or these decisions, Plaintiff relies on readily distinguishable cases.   For instance, Plaintiff cites to *Williams v. Wells Fargo Bank, N.A.*, No. 11-21233, 2011 WL 4901346 (S.D. Fla. Oct. 14, 2011), as a purported example of a court denying a motion to dismiss a breach of contract claim. However, the court there was not even faced with a breach of contract claim and did not analyze whether such a claim was sufficiently plead.   Instead, in *Williams* the lender allegedly charged a borrower more for insurance than what it actually paid and the issue was whether that constituted a breach of good faith.   Similarly, Plaintiff's cite to *Pailes v. HSBC Mortg. Servs.*, No. 10-11509, 2011 WL 2791043 (D. Mass. Jul. 17, 2011), adds nothing to this Court's analysis.   Unlike *Lass* and *Kolbe* – where the court actually examined the same mortgage language found here – there is

---

[3]       *See also* FEMA Guidelines, p. 11 ("Lenders, on their own initiative, may require the purchase of flood insurance even if a building is located outside an SFHA.   A decision to require coverage under such circumstances is not compelled by the statute, but is founded on the contractual relationship between the parties.   Lenders have the prerogative to require flood insurance to protect their investments, provided that they have reserved that option in their mortgage loan document.").

no indication that the court in *Pailes* even considered the language of the mortgage before it. Indeed, the court does not even mention the terms of the mortgage.

The fact that Plaintiff refuses to address the plain language of the loan documents in her breach of contract case speaks volumes. The ineluctable truth is that the contract between the parties explicitly permitted GMAC to take the actions that it did. Accordingly, all six of Plaintiff's claims fail and should be dismissed.[4]

**B.    The Loan Documents Did Not Waive The Insurance Requirement For All Time**

Recognizing that she is unable to escape the plain language of the contract, Plaintiff now argues that the originating lender waived its rights under the Mortgage. As an initial matter, this new "waiver" theory finds no support in the Complaint. And, Plaintiff's new theory is not supported by any case law or other authority. Nowhere in Plaintiff's Opposition is she able to cite any authority supporting her argument that, because Plaintiff's original lender required a certain amount of insurance coverage at closing, GMAC is deemed to have agreed to waive any right to later require a different amount.[5]

Further, Plaintiff's argument is not supported by the language of the Condo Rider. Indeed, there is nothing in the Mortgage or Condo Rider suggesting that GMAC is deemed to have waived any rights forever. Instead, the plain language of the Condo Rider says the exact

---

[4]    Plaintiff devotes much of her Opposition to arguing that the RCBAP provided sufficient insurance coverage. GMAC's principal Brief addresses this in detail. However, the fact that Plaintiff claims that the RCBAP provided sufficient coverage does not change the reality that the Mortgage gave GMAC the discretion to determine the amount of coverage sufficient to protect the borrower and the lender's interests regardless of the RCBAP.

[5]    Plaintiff's alternative argument that GMAC had to provide her with specific reasons for the change in conditions for a waiver before requiring additional insurance is also not supported by any contractual language or legal authority and accordingly should be rejected.

opposite, *i.e.*, that GMAC has the right to change the conditions for any waiver. *See* Condo Rider, p. 2, § B (**"What Lender requires as a condition of this waiver can <u>change</u> during the term of the loan."**) (emphasis added).[6] *See also Hayes*, 2006 WL 3193743 at *4 (rejecting argument that lender's acceptance at closing of flood insurance coverage in an amount equal to borrower's indebtedness resulted in "waive[r] [of] any right to require a greater amount of flood coverage [in the future]" because (a) "[n]o evidence exists of this claim in the Mortgage Agreement or by amendment;" (b) the borrower's "reasoning would have the Court ignore the plain language of the contract [giving the lender discretion to change the amount of flood insurance required];" and (c) under the borrower's flawed reasoning, "any contract provision permitting a party to modify their behavior or later exercise rights that they do not choose to exercise at the time of execution would be rendered meaningless.").

Moreover, this right to change the conditions for a waiver is also consistent with the NFIA, which requires lenders to continue to monitor the amount of coverage a borrower has and make sure that the lender is satisfied with the amount of coverage. *See* 42 U.S.C. § 4012a(e)(1). Where a lender is not satisfied with the amount of insurance coverage, the NFIA requires that it increase the borrower's coverage. *See* 42 U.S.C. § 4012a(e)(2).

In short, the contract expressly permitted GMAC to take the actions that it did. Plaintiff has not meaningfully refuted this and her arguments that GMAC waived these rights fail.

---

[6]     For this reason, among others, *Vican v. Wells Fargo Home Mortg.*, No. 05-114, 2006 WL 69470 (N.D. Ind. Mar. 16, 2006), is distinguishable.  Unlike here, the court in *Vician* was not presented with a provision that allowed the lender the change the condition for a waiver.

**C.     Setting The Amount Of Flood Insurance Using Hazard Insurance Replacement Value Was A Proper Exercise Of GMAC's Contractual Discretion**

Although Plaintiff concedes that hazard insurance is typically used as a "proxy" for replacement value, Plaintiff paradoxically argues that doing so is a breach of good faith. Plaintiff, however, has failed to point to any authority that says it is bad faith for a lender to use hazard insurance as a benchmark.   Even the NFIA recognizes that using hazard insurance is typical and, more importantly, acceptable. *See* FEMA Guidelines, p. 27 (Lenders should follow the same general business practice in calculating the flood insurance coverage amount on a building as they do in placing other hazard coverage, *e.g.*, homeowners insurance.").[7]   And, Plaintiff has not pointed to anything in the NFIA that says policies through the NFIP will not pay for coverage based on replacement costs taken from the hazard insurance policy.  Of course, if an insurer sells a policy, it is bound to pay under the policy.

Further, Plaintiff is required to allege and prove a bad motive by GMAC in order to succeed on her breach of good faith claim. *Hassler v. Sovereign Bank*, 374 Fed. Appx. 341, 345 (3d Cir. 2010).  Plaintiff does not allege any facts to show a bad motive.  Instead, Plaintiff can only point to one allegation: "GMAC allegedly knew Plaintiff had adequte coverage but charged Plaintiff for coverage anyway."  Opp. Brief, p. 16.  However, this is not enough. *Hassler*, 374 Fed. Appx. at 345 (finding that the allegations in the complaint must allege more than a disagreement with the exercise of discretion under an agreement).

---

[7]      In fact, a lender can require insurance whether or not the NFIA requires insurance. *See* FEMA Guidelines, p. 2 ("A lender may require a borrower to obtain non-federally backed private flood insurance, if available, even in the absence of a Federal mandatory purchase requirement.").

Calculating the required insurance coverage using the replacement value under the hazard insurance policy provided by Plaintiff is neither arbitrary nor unreasonable, and certainly does not rise to the level of bad faith. *See Morgan v. Litton Loan Servicing LP*, No. 10-1865, 2010 WL 3464691 (D. Md. Sep. 8, 2010) (a case which Plaintiff ignores); *see also* FEMA Guidelines, p. 27 ("To protect collateral interests, a lender should consider whether its collateral is adequately insured against flood damage.").

Moreover,  if GMAC took a less conservative approach it could open itself to possible civil penalties under the NFIA. *See* 42 U.S.C. § 4012a(f).  Similarly, if GMAC took a less conservative approach it could also expose itself to lawsuits by borrowers who argue that GMAC should have purchased  or force-placed insurance coverge required by the NFIA. *See, e.g.*, *Nicholson v. Countrywide Home Loans*, No. 107-cv-03288, 2008 WL 731032, at *3 (N.D. Ohio Jan. 7, 2008) (asserting negligence claims against lender for, *inter alia*, "failing to require that the mortgagor purchase the required insurance or to 'force-place' it pursuant to the terms of the NFIA."); *Doss v. Cuevas*, 985 So. 2d 740, 742 (La. App. 1st Cir. 2008) (same). *See also* FEMA Guidelines, p. 11 ("Section 42 of U.S.C. §4012a sets the ultimate responsibility to place flood insurance on the applicable lender").

Plaintiff's reliance on *CoreStates Bank, N.A. v. Cutillo*, 723 A.2d 1053, 1059 (Pa. Super. Ct. 1999), is misplaced.  There, the court created a very narrow exception to the rule that a "lending institution does not violate a separate duty of good faith by adhering to its agreement with a borrower or enforcing its contractual rights as a creditor." *Id.*  In particular, the court found an exception to this normal rule where the plaintiff had developed a "special trust and reliance" over a 19 year-relationship in which he dealt almost exclusively with the bank regaridng his financial affairs. *Id.*  Plaintiff was simply a one time borrower of GMAC.

Plaintiff's cite to *Emerson Radio Corp. v. Orion Sales Inc.*, 80 F. Supp. 2d 307 (D.N.J. 2000), actually cuts against her argument. There, the court ultimately dismissed the plaintiff's claim for breach of good faith. In doing so, the court recognized that "[w]here the parties have expressly addressed an issue in their contract, that expression trumps any contrary claim based upon the implied duty. The courts routinely hold that the function of the court is to enforce the agreement as written, not to write for the parties a different or a better contract." *Id.* at 313 (quotation and citations omitted). Finally, *Hofstetter v. Chase Home Finance, LLC*, No. 10-01313, 2010 WL 4606478 (N.D. Cal. Oct. 29, 2010), another case cited by Plaintiff, did not even involve a claim for breach of good faith.

Against this backdrop, Plaintiff has failed to allege sufficient facts to show a bad motive on the part of GMAC and her breach of good faith claim accordingly fails.[8]

### D.   Because Her Conversion And CFA Claims Arise Out Of GMAC's Exercise Of Its Contractual Discretion, Plaintiff Cannot Avoid The Economic Loss Doctrine

Plaintiff attempts to avoid application of the economic loss doctrine by arguing that her CFA and conversion claims are based on some kind of independent duties outside of the contracts. Ultimately, however, Plaintiff cannot avoid admitting that her claims for conversion and under the CFA turn on whether or not GMAC had discretion under the Mortgage and Condo Rider to force place flood insurance on her condominium. *See, e.g.*, Opp. Br., p. 26 ("GMAC further violated the CFA by misrepresenting that federal law and the terms of the Mortgage required Ms. Cronk to obtain ... flood insurance."); Opp. Br., p. 27 ("Ms. Cronk has sufficiently

---

[8]    Plaintiff tries to argue that dismissal is inappropriate because she needs unspecified discovery. However, no amount of discovery will change the admissions in the Complaint or the documents on which Plaintiff's claims are based. Moreover, while Plaintiff faults GMAC for attaching documents integral to her Complaint, she does not dispute their authenticity and her Opposition and her case are based on these documents.

alleged that GMAC did not have the right to send those notices under the Mortgage."). Plaintiff's CFA and conversion claims are thus precisely the type of claims that the economic loss doctrine bars.

Indeed, even in *Wulf v. Bank of America, N.A.*, No. 10-5176, 2011 WL 2550628 (E.D. Pa. June 27, 2011), a case Plaintiff relies on extensively, the court determined that dismissal was warranted based on the doctrine. Moreover, the Court can readily the two main cases relied upon by Plaintiff on this point. First, *People Express Airlines v. Consol. Rail Corp.*, 495 A.2d 107, 116 (N.J. 1985), did not involve tort remedies arising from a contractual relationship. Rather, it addressed whether a plaintiff can recover economic losses based on negligent conduct arising out of a chemical leak from a railway tank car. Indeed, the Third Circuit severely limited *People Express* and held that the holding in that case does not apply where the parties have a contractual relationship. *In re Meritt Logan, Inc.*, 901 F.2d 349, 362 (3d Cir. 1990). Second, Plaintiff's claim that *Owen J. Roberts Sch. Dist. v. HTE Inc.*, No. 02-7830, 2003 U.S. Dist. LEXIS 2997 (E.D. Pa. Feb. 28, 2003), stands for the proposition that the economic loss doctrine cannot be applied at the motion to dismiss stage is belied by the fact this Court actually granted in part the defendant's motion to dismiss based on the gist of the action doctrine (an analogous doctrine).

At the end of the day, Plaintiff cannot seriously dispute that her CFA and conversion claims are dependent upon the terms of the Mortgage and, consequently, barred by the economic loss doctrine.[9]

---

[9]     Plaintiff's opposition makes out-of-the-blue references to RESPA and the Dodd-Frank Act in this context. The Complaint, however, does not allege facts that would make any potential claims plausible under those laws – laws never cited in that pleading in the first place.

### E.   Plaintiff Misconstrues The Other Grounds For Dismissing The Conversion Claim

Plaintiff tries to suggest that GMAC has argued that money cannot be the basis of a conversion claim. This is not so. GMAC's argument is simple: in order to sufficiently allege a conversion claim, Plaintiff must show that GMAC took her property _without authority or permission_. *See* GMAC's Opening Br., p. 20. GMAC had the authority under the Mortgage to purchase insurance on Plaintiff's behalf where she refused to do so and require escrow payments for the premiums. *See* Mortgage, p. 4, § 3. This provision is in fact consistent with the NFIA's requirement that a lender shall purchase flood insurance on behalf of the borrower who refuses to do so. 42 U.S.C. § 4012a(e)(2).[10]

### F.   Plaintiff's CFA Claim Also Fails Because GMAC Exercised A Contractual Right

Plaintiff has clarified that her CFA is based on GMAC's letter indicating "the terms of her mortgage and/or federal law require her to purchase adequate flood insurance." *See* Opp. Br., p. 23. According to Plaintiff, "[t]he requirements GMAC sought to enforce, however, were not included in the Mortgage and are inconsistent with federal law." *Id.* Thus, Plaintiff's CFA

---

[10]    GMAC regrets the typo in its Opening Brief. Of course, GMAC meant § 4012a(e)(2) instead of a nonexistent § 4012a(3)(2). Subsection (e)(2) reads: "If the borrower fails to purchase such flood insurance within 45 days after notification under paragraph (1), the lender or servicer for the loan shall purchase the insurance on behalf of the borrower and may charge the borrower for the cost of premiums and fees incurred by the lender or servicer for the loan in purchasing the insurance." This section makes clear that the NFIA actually required GMAC to purchase coverage on Plaintiff's behalf when she refused to do so. As an aside, Plaintiff always had the option to secure the additional flood insurance herself; as admitted in the Complaint, Plaintiff received no less than two notices of GMAC's decision that additional flood insurance was deemed necessary, but chose not to obtain such additional insurance herself. As was applicable then, and remains applicable now, Plaintiff may obtain her own additional flood insurance policy and GMAC will cancel the force placed insurance and issue a credit for the unused premium amount to Plaintiff's escrow.

claim turns on a legal interpretation of the Mortgage. Accordingly, if Mortgage required Plaintiff to purchase insurance, there could be no "fraud" on which to base a CFA claim.

Plaintiff fails in her attempts to distinguish the Third Circuit's decision in *Hassler*. There, the plaintiff filed a putative class action alleging that the defendant bank posted his withdrawals in non-chronological order in violation of the CFA. The Third Circuit held that the CFA claim was properly dismissed because the defendant reserved the discretion in the account agreements as to the order of posting withdrawals in the account agreements. *Id.* at 344. Therefore, there was no basis for a CFA claim as the defendant was simply exercising its discretion under the agreement.

Plaintiff tries to distinguish *Hassler* by claiming that the contract at issue explicitly allowed for the actions taken by the defendant and that the Mortgage and Condo Rider allegedly do not allow GMAC's actions. By making this argument, Plaintiff makes clear that her CFA is dependent on the interpretation of the loan documents. Further, Plaintiff's purported distinction is plain wrong. The Mortgage unambiguously provided GMAC with: (1) the discretion to determine how much insurance was necessary, (2) the right to purchase the insurance should Plaintiff fail to do so, and (3) the right to escrow the premiums. Moreover, neither the Mortgage nor the Condo Rider prevented GMAC from requiring additional insurance even where Plaintiff feels that the RCBAP is sufficient. Again, as in *Hassler*, that determination was the prerogative of the lender and not the borrower.

Finally, Plaintiff cites to *Gonzalez v. Wilshire Credit Corp.*, 254 A.3d 1103 (N.J. 2011), claiming that the court found that improper fees for force-placed insurance violates the CFA. However, he issue decided by the court was whether post-foreclosure agreements are subject to the CFA. *Id.* at 1121 ("This case addresses only the narrow issue before us: the applicability of

- 10 -

the CFA to post-foreclosure-judgment agreement involving stand alone extension of credit."). The court never, as Plaintiff suggests, held that "improper fees for force-place flood insurance violates the CFA." Rather, Plaintiff is attempting to inappropriately substitute the alleged position of an amicus for that of the court simply because the court ruled in favor of a certain party.[11]

**G.    Plaintiff Has Not Established An Affirmative "Unconscionability" Damages Claim**

Plaintiff's Opposition does not even manage to address *Lind v. New Hope Property, LLC*, No. 09-3757, 2010 WL 1493003, *12 (D.N.J. Apr. 13, 2010) (unconscionability is not a claim for affirmative relief). Moreover, not one of the cases cited by Plaintiff holds that New Jersey recognizes an affirmative damages claim based on "unconscionability." This should be the end of the analysis and Plaintiff's attempt to assert such a claim should be rejected outright.

Even were there such a claim, Plaintiff's Opposition fails to address the fundamental fact that the contracts at issue here are standard forms created by Fannie Mae/Freddie Mac and used throughout the industry. Plaintiff simply cannot plausibly claim that no reasonable person would accept these widely used uniform contracts or that they were entered into as a result of procedurally unconscionable bargaining disparities. For this additional reason, this Court should dismiss Plaintiff's "unconscionability" damages claim.

---

[11]    Plaintiff's cite to *N.J. Citizen Action v. Schering-Plough Corp.*, 842 A.2d 174, 176 (N.J. Super. Ct. App. Div. 2003), actually supports dismissal here since the court dismissed the CFA claim. The court found that there was no causal connection between the alleged violation and the loss. Here, the alleged violation of the CFA, *i.e.*, the notice informing Plaintiff that the terms of the Mortgage required more insurance did not cause the alleged loss, *i.e.*, the loss of moneys taken from her escrow account. In other words, Plaintiff does not allege that she suffered any losses as a result of the allegedly deceptive letter. For this independent reason, Plaintiff's CFA claim should be dismissed. *See Frederico v. Home Depot*, 507 F.3d 188, 203 (3d Cir. 2007) (affirming dismissal of plaintiff's CFA claim where alleged loss was attributable to something other than the alleged unlawful conduct of defendant).

### H.   TILA Did Not Require That GMAC Make Additional Disclosures

While acknowledging that TILA requires certain specific disclosures in certain specific situations – and that she has no claim in that regard – Plaintiff argues that GMAC was required to make "general disclosures" when it purchased flood insurance on her behalf.  This is not supported by any language in TILA.  While it is true that TILA has a general requirement that the specific TILA disclosures, when necessary, must be truthful and accurate, that requirement cannot be twisted into some requirement to make "general disclosures."

Contrary to Plaintiff's suggestion, 12 C.F.R. § 226.17(c) does not include a duty to make general disclosures.  And the cases on which Plaintiff relies for this point are all distinguishable. First, *Rossman v. Fleet Bank, N.A.*, 280 F.3d 384, 393 (3d Cir. 2002), is not helpful because the court in that case only held that the *original* TILA disclosures from closing cannot be misleading and that there would only be a TILA violation if the underlying agreement did not allow for the fee at issue.  Here, the Mortgage allowed GMAC to take the actions that it did.  Indeed, *Rossman* has been distinguished on a number of occasions.  *See, e.g., Porter v. Nationscredit Cons. Discount Co.*, No. 03-03768, 2007 WL 30117 (distinguishing *Rossman* because that case concerned specific disclosures in the credit card context known as the "Schumer Box."); *Bowmer v. NovaStar Mortg. Funding Trust, Series 2006-1*, 711 F. Supp. 3d 390, 397 (E.D. Pa. 2010) (distinguishing *Rossman* because it involved an open-end credit and not closed end credit as was the case in *Bowmer* and is the case here).[12]

---

[12]     For these same reasons, *Demando v. Morris*, 206 F.3d 1300 (9th Cir. 2000), and *Roberts v. Fleet Bank, N.A.*, 342 F.3d 260 (3d Cir. 2003), are distinguishable.  Moreover, *Hubbard v. Fidelity Fed. Bank*, 91 F.3d 75 (9th Cir. 1996), and *Wulf*, 2011 WL 2550628, are similarly distinguishable because in both of those cases the TILA claim turned on the courts' finding that the underlying agreement did not allow for the actions taken by the lender.  Indeed, in *Hubbard*, the court even affirmed dismissal of some of the claims where the plaintiff could not show that the actions were in contradiction to the underlying agreement.  *Hubbard*, 91 F.3d at 79.  As for

Continued on following page

Further, with respect to post-closing disclosures, Plaintiff fails to completely quote the Official Staff Interpretation to Regulation Z, which explicitly states that new TILA disclosures are only required after closing in the context of force-placed insurance under § 226.20 for refinances, loan assumptions, or variable rate changes. None of these situations are alleged here.

Plaintiff also fails to address *Adams v. GMAC Mortg. Corp. of Pa.*, No. 94-3233, 1994 WL 702639 (N.D. Ill. Dec. 14, 1994), and *Pauley v. Bank One Colorado Corp.*, 205 B.R. 272 275-76 (D. Colo. 1997), both of which dismissed a TILA claim because the loan agreement made clear that the lender could place insurance and that the insurance was not considered by Regulation Z to be part of the finance charge. These cases directly contradict Plaintiff's theory that GMAC violated TILA.

Finally, Plaintiff fails to meaningfully refute GMAC' argument that TILA's safe harbor provision applies here. Without a single citation, Plaintiff argues that, although the increased cost of insurance was only $26, *i.e.*, within TILA's $100 safe harbor provision, GMAC should have disclosed all charges over the life of the loan. In fact, TILA disclosures do not include charges over the life of the loan. Instead, TILA disclosures include the charge at the time of the disclosure. *See* 12 C.F.R. § 226.4.[13] In short, Plaintiff has failed state a claim under TILA.

---

Continued from previous page
*Bermudez v. First of Am. Bank Champion, N.A.* 860 F. Supp. 580 (N.D. Ill. 1994), not only was that opinion withdrawn by the court, it is distinguishable because it involved vehicle insurance not subject to the exemption under 12 C.F.R. §226.4(d)(2). These cases are further discussed in GMAC's principal Brief at pp. 28-30.

[13]    Plaintiff's new theory of assignee liability requires that a TILA violation be apparent on the face of the original documents. The Complaint has no such allegation. And there could be no allegation that there was any TILA violation apparent on the face of the original documents when assigned to GMAC.

## I.   The Dodd-Frank Act Does Not Save Plaintiff's TCCWNA Claim

As noted above and in GMAC's principal Brief, GMAC did not violate TILA or the CFA and, therefore, Plaintiff's TCCWNA claim predicated on those statutes likewise fail.  In light of this, Plaintiff now offers the Court the legal conclusion that GMAC "appears" to have violated the Dodd-Frank Act and its concomitant provisions amending RESPA. *See* Opp. Br. at 37.

As a threshold matter, the sections of the Dodd-Frank Act amending RESPA which are relied upon by Plaintiff – even according to Plaintiff's own cases – are not yet even in effect. *See Williams*, 2011 WL 4368980, at *4-7 (finding that effective date of Dodd-Frank Act provisions enacting RESPA §§ 2605(k)-(m) "will not occur for some eighteen months *after* the July 21, 2011 'designated transfer date.'") (analyzing Dodd-Frank Act, Pub. L. No. 111–203, 124 Stat. 1376 (2010), at §§ 1400(c), 1463).  Moreover, there are no facts in the Complaint that support any "apparent" violation of RESPA or the Dodd-Frank Act. *See Rivera v. Washington Mut. Bank*, 637 F. Supp. 2d 256, 268 (D.N.J. 2009) (granting motion to dismiss where "nothing on [the face of the contract] suggests that the provisions violate any law").  For these reasons, Plaintiff reliance on Dodd-Frank fails as a matter of law.

## J.   There Must Be More Than A Mere Threat Which Might Possibly Result In Injury At Some Future Time To Avoid Application Of The Voluntary Payment Doctrine

Plaintiff tries to avoid application of the voluntary payment doctrine by arguing that the issue should not be decided on a motion to dismiss and that she was "coerced" into making the payment for fear of damage to her credit rating.  This Court, however, has already rejected this very argument in *Abrevaya v. VW Credit Leasing, Ltd.*, No. 09-00521, 2009 WL 8466868, at *3 (E.D. Pa. Jul. 22, 2009) (Granting motion to dismiss and rejecting argument that doctrine does not apply where plaintiff claimed she was coerced to make a payment for fear of future harm to

her credit rating: "acting to protect one's credit rating is not an action under duress") (Dalzell, J.). Accordingly, the voluntary payment doctrine bars Plaintiff's claims.

## III.   <u>CONCLUSION</u>

For the reasons set forth here and in GMAC's Opening Brief, the Court should dismiss the Complaint.

Respectfully submitted,

*/s/ Joe N. Nguyen*
Henry F. Reichner
Joe N. Nguyen
**REED SMITH LLP**
2500 One Liberty Place
1650 Market Street
Philadelphia, PA 19103-7301
Telephone No. (215) 851-8100
Facsimile No.  (215) 851-1420

*Attorneys for Defendant*
*GMAC Mortgage, LLC*